# COURT OF ERRORS AND APPEALS,

## JUNE TERM,

## 1888.

———•———

DELAWARE CITY, S. & P. S. N. Co. *v.* ANTHONY REYBOLD.

*Corporations—Directors—Power to Act— Contract — Recovery for Services Rendered.*

The directors of a corporation, acting within the defined scope of their authority, are, virtually, the hand of the company doing its business, and they have the power to settle and dispose of the claims of the company.

The declaration of the directors of the defendant corporation that, if plaintiff would proceed for and recover anything on a claim due the defendant company, he might have it, was in the nature of an offer on their part, which, when accepted by him by acting upon and expending his time and money in recovery of the claim, bound the company whose officers they were, they acting within the scope of their authority.

The corporation defendant, having a claim against the United States, could not legally assign it to the plaintiff; but if he secured it by his efforts and expenditures in the production of the necessary proof, he is entitled to recover for the same upon the count for money had and received, or upon the count for work and labor done.

Where a jury has passed upon a disputed question of fact, the court of errors and appeals has no jurisdiction to review its decision.

(*June 20, 1888.*)

ERROR to superior court, New Castle county.

*Assumpsit* by Anthony Reybold against the Delaware City,

Salem & Philadelphia Steamboat Navigation Company for money had and received, and work and labor done, under an agreement by the directors of the defendant company allowing him to prosecute the collection of a claim of the company against the United States at his own expense, and retain the proceeds. The jury found a verdict for plaintiff, and defendant brings error.

This was an action in the Superior Court, of assumpsit, to recover the sum of $2,898.18 and its interest being the amount received by the defendant from the United States for the pilotage and hire of the Steamboat "Swan," formerly owned by the defendant and chartered by it to the Government.

At the trial of this cause, at the May Term, 1885, it was proved that the defendant Company had a claim against the United States for the pilotage and hire of the Steamboat Swan, formerly owned by the defendant, and that the plaintiff, then a director of said Company, brought said claim to the attention of the Directors at a meeting of the Board held in 1876 or 1877, and urged that it should be collected by the Company.

There was evidence on behalf of the plaintiff that the other Directors at said meeting replied that said claim was worthless; that there was no use throwing good money after bad, and they declined to prosecute the same for the Company, and thereupon at the request of the plaintiff, there was an understanding or agreement between the Board and the plaintiff, that if he would undertake the collection of said claim, he might have what he could get from it, provided the Company should be at no expense in the matter.

Several witnesses for the defendant, two of whom were present at said meeting, testified that there never was any such understanding or agreement between the Board of Directors and the plaintiff.

There was evidence on behalf of the plaintiff that he was never a Director of said Company after May 3, 1877, and that he never was a stockholder in said Company after October 1, 1880.

There was evidence on behalf of the plaintiff that after said meeting, the plaintiff got from the Treasurer of the Company certain books and papers of the company for the purpose of obtaining the facts in relation to said claim, and that then and afterwards the plaintiff did certain work and incurred certain expenses in the collection of evidence as to said claim and in the prosecution of the same.

At a meeting of the Board of Directors held December 5, 1878, the following letter was received from the plaintiff:

" *To the President and Directors of the Delaware City, Salem and Philadelphia Steamboat Company.*

GENTLEMEN : You once told me that if I could collect the deduction made by the Government on the Charter of the Steamer Swan, I might have it, do you still say so ?

Yours respectfully,

(Signed)                      ANTHONY REYBOLD."

The following is an extract from the minutes of said last mentioned meeting :

" A letter was read from Anthony Reybold asking whether this Company would adhere to a promise heretofore made him, giving him the fruits of any deduction from the Government charter of the Steamer Swan.   Answered that they would confirm and adhere to any previous promises made to him."

The following is an extract from the minutes of the next meeting of the Board of Directors, held March 6, 1879 :

" The minutes of the last meeting December 5, were read and adopted."

At a meeting of the Board of Directors held April 7, 1881, the following letter was received from the plaintiff:

PHILADELPHIA, March 29th, 1881.
*To the President and Board of Directors of the Delaware City, Salem, and Philadelphia Steamboat Navigation Co.*

GENTLEMEN: The claim against the Government in favor of the Steamer Swan and due your company, has been given to me, by your Board, to enable me to collect the same, my Council, advises me to get from the Company a bill of sale.

You will greatly oblige and assist me in the collection of the same, by complying with the request, and fixing the amount at a nominal sum, say one dollar."

Respectfully,
(Signed)                    ANTHONY REYBOLD."

At said last mentioned meeting the following resolutions were adopted:

" On motion,
*Resolved,* That the President or Treasurer of this Company be authorized to file a claim against the United States Government for any balance due this Company on account of the Steamer Swan, and collect the same."

On motion,
*Resolved,* That the President or Treasurer of this Company shall be empowered to make a contract with any person for the recovery of any claim due from the United States Government to this Company."

" A communication was received and read from Anthony Reybold asking this company to convey to him by bill of sale the Company's claim against the United States Government on account of Steamer Swan, ordered filed."

The plaintiff testified that at the date of the said last mentioned resolutions, he had prosecuted the said claim to the stage when the Government was ready to pay the money over to the claimant.

The plaintiff also testified that up to the time of his receiving notice of the passage of the said last mentioned resolutions, he had received no intimation from any officer or member of said Company, or any other person, that there was any objection to his collecting said claim on his own account.

There was evidence on behalf of the plaintiff, that after he had received from the Treasurer of the Company certain books and papers in relation to said claim as aforesaid, and before the adoption of said last mentioned resolutions, the said Treasurer, at the request of the plaintiff, from time to time, signed papers required in the prosecution of said claim ; and that the plaintiff a short time before the adoption of the said last mentioned resolutions, sent by a messenger to the said Treasurer a paper to be signed and an affidavit to be made thereto, to be presented to the Government concerning said claim, but the said Treasurer refused to sign it, or to make the affidavit to it, unless the plaintiff would agree to apply the amount which he should receive on said claim to a debt of the plaintiff to the Farmers' Bank for which the said Treasurer was personally bound as surety.

On the part of the defendant there was evidence that said Treasurer made affidavit to a paper in prosecution of said claim shortly after the said meeting of the Directors held April 7, 1881, and that before that time no paper to prosecute said claim was executed by the Treasurer, nor was any action taken by the Directors authorizing any such paper to be executed.

The plaintiff testified that all the work he performed, and all the expenses he incurred, in and about the prosecution of the said claim, he did for his own individual benefit, under the expectation of getting the money for himself and not for the Company, and not under or because of any promise of the Company to pay him

for such work or expenses, and that the Company did not make him any such promise on behalf of the plaintiff. Thomas I. Hilyard testified, that at a meeeting of the stockholders in 1876 or 1877, the plaintiff brought up the matter of this claim of the Company against the Government for the Steamer Swan, and asked "why the collection of it was not made;" and that Thomas Clyde, in the chair, replied that "the matter was not worth contending for, and that there was no use of throwing good money after bad," and that that was the general sense of the meeting, and no objection was made by any person.

It was testified by witnesses for the defendant, who were stockholders, that they had attended all of the meetings of the stockholders, and had never heard the subject matter of the said claim brought before the stockholders.

Edwin C. Reybold, one of the stockholders, before and since 1876, further testified that he had never been a director of the Company, and that he never heard of the said claim until after the meeting of the Directors on April 7, 1881, when they determined to collect the claim for the Company.

There was evidence that the Directors of the Company in 1877, held 442 shares of the Capital Stock of the Company out of a total of 615 shares at that time issued, and that the Directors on December 5, 1878, held 742 shares out of a total of 915 shares at that time issued.

It was further proved that the Treasurer of the Company on September 1, 1882, received through the counsel of the Company from the Government, the sum of $2,753.18, being the proceeds of said claim, less all expeses attending the collection thereof.

The defendant's counsel prayed the Court to instruct the jury as follows :

1. The directors of a corporation have no right to give away the property of the corporation without the consent of all of the stockholders.

2. The directors of a corporation have no right to give away a claim of the corporation, or the proceeds of the same, without the consent of all of the stockholders.

3. To make such gifts valid requires the consent or ratification of all of the stockholders.

4. Where it does not appear that the stockholders expressly consent to, or ratified such a gift, such consent or ratification cannot be implied without proof that the knowledge of such gift was brought home to all of the stockholders.

5. It is the duty of the Company to rescind an unexecuted contract or gift, if the same is *ultra vires*, or *prohibited by law*.

6. A contract or transfer of property by a corporation is absolutely void, if declared void by the act of incorporation, or by a general law.

7. This rule is applicable to a contract, or transfer which has been partially, or wholly executed by the party contracting with the corporation, or receiving from it such transfer.

8. In such case, the party dealing with the corporation cannot enforce the performance of the contract or the transfer of the property by the corporation, or recover from it the consideration paid, or compensation for the consideration in case it was work and labor.

9. Whether the transaction between the plaintiff and defendant was a gift or transfer to the plaintiff of the claim of the defendant against the United States, or a contract, agreement or understanding to give or transfer said claim to the plaintiff in the future, or to pay to him the proceeds of such claim when received by the defendant, it is within the provisions of Section 3477 of the Revised Statutes of the United States, and is void; and no action

14

can be maintained against the defendant for the proceeds of said claim received by it from the United States, or any part thereof ; or for compensation for the work and labor of the plaintiff performed in the recovery of said claim as the consideration of such gift or transfer, or as the consideration of such contract, agreement or understanding.

19. That an agreement by the Company to pay for the work and labor of the plaintiff cannot be implied from the facts proved in this case.

11. That the plaintiff is not entitled to recover on the contract claimed by the plaintiff to have been proved, or for work and labor performed under it.

12. That the plaintiff is not entitled to recover on a *quantum meruit* for his work and labor performed in the prosecution of said claim.

13. That the plaintiff can recover nothing for money paid for his expenses &c., as no such claim is made in his bill of particulars.

" A "—AN ACT TO INCORPORATE THE DELAWARE CITY, SALEM AND PHILADELPHIA STEAMBOAT NAVIGATION COMPANY.

*Be it enacted by the Senate and House of Representatives of the State of Delaware, in General Assembly met (two-thirds of each Branch concurring :)*

SECTION 1.   That John Reybold, William Reybold, John C. Clark, Barney Reybold, Thomas Clark, Thomas Murphy and Anthony Reybold, now associated under the name of Reybold, Clark & Co., as the owners of a line of steamboats running between Salem, Delaware City, Philadelphia and other places on the Delaware River and Bay, and their tributaries, and such other persons

as shall hereafter become Stockholders in the said Company, be and they are hereby declared to be a corporation and body politic, by the name of "The Delaware City, Salem and Philadelphia Steamboat Navigation Company," and by that name they, and their successors and assigns shall and may have continued succession and be capable to sue and be sued in Courts of Law and Equity, to purchase, build, hold, occupy, and convey any Steamboat or boats, lands, tenements, and real and personal estate whatsoever, which shall be necessary to carry into effect the objects of the said corporation, to have a common seal, to ordain by-laws for their own government, not inconsistent with the laws of this State or the Constitution of the United States, and to enjoy the franchises incident to a corporation ; *Provided*, that the said corporation shall not have or exercise any banking powers, and that their Capital Stock shall consist of One Thousand Shares of One Hundred Dollars each, and the President and Directors shall have power from time to time to increase the capital stock to such an amount as may be deemed necessary for the accomplishment of the objects of this corporation ; *Provided*, that the same shall not exceed at any time, One Thousand Five Hundred Shares, at the prices aforesaid.

SEC. 2.   And be it further enacted, That the business and concerns of the said Corporation shall be managed by seven Directors who shall be Stockholders, and shall be elected at each annual meeting of the Stockholders, which shall be on the first Thursday in May of every year, and shall continue in office until the next succeeding annual meeting, and until successors to them shall be duly chosen.   The Directors shall be chosen by ballot by the Stockholders in person or by proxy, who shall have a vote for every share of Stock, and a majority of votes given in shall be necessary to a choice.   If any Director ceases to be a Stockholder he shall at the same time cease to be a Director, and if any vacancy or vacancies occur by death, resignation, refusal to serve, or otherwise, the remaining Director or Directors, as the case may be, shall choose

one or more Directors to serve until the next election in course, or until successors shall be duly chosen, and if vacancies shall at any time exist in all the offices of Directors, the Corporation shall not thereby cease, but the business of the Corporation may be managed by such persons as may be designated by the By-Laws until new Directors are chosen by the Stockholders. The Directors until the first annual meeting after the passing of this act and until otherwise chosen shall be John Reybold, William Reybold, John C. Clark, Barney Reybold, Thomas Clark, Thomas Murphey and Anthony Reybold.

SEC. 3. And be it further enacted, That the Capital Stock of the said Corporation shall be divided into shares of One Hundred Dollars each, and that when, or so soon as two hundred shares shall have been subscribed the said Corporation may be organized and for that purpose it shall be lawful for the said Reybold, Clark & Co., to transfer, assign and convey to the said Corporation the Steamboat "Major Reybold" with her machinery, furniture and apparel, together with the lands, wharves and buildings now held by them at the sum or price of                Thousand Dollars, to be subscribed by them in the Capital Stock of the said Corporation in the number of shares equivalent thereto, and the said Steamboat, Wharves, Lands and Buildings so transferred, assigned or conveyed shall be deemed, taken and held as the property of the said Corporation, and said Director appointed by this act shall have power to open books for further subscription to the said Capital Stock, as limited by the first Section of this act at such time or times, place or places, as they, or a majority of them, shall think proper, giving at least twenty days notice of the time and place of meeting, and of the time of subscription for the said Stock.

SEC. 4. And be it further enacted, That the Board of Directors, for the time being, shall have power to elect a President, who shall be a Director, a Treasurer and all other officers and agents and

to employ such workmen, artificers, and laborers as shall be necessary to carry into effect and execute all the powers by this act granted to the said Corporation, and to allow such compensation as shall be agreed upon, and if they judge it necessary, to exact and take from their officers and agents bonds for the proper execution of their several duties and trusts, and for the faithful performance of their several contracts.

Sec. 5.   And be it further enacted, That the President shall preside at all meetings of the said Corporation, and if absent, his place may be supplied by the election of any one of the Directors *pro tem.*:   That the said Directors of the said corporation shall have power by their by-laws to fix, determine and regulate the prices of transportation of passengers, goods, wares and merchandise, wagons, carriages, horses, cattle, stock of every description, or other articles that shall be transported in the boat or boats of the said Corporation, and that the said Board of Directors shall from time to time declare dividends of so much of the profits of the said Corporation as they may deem advisable and pay the same over to the persons entitled thereto.

Sec. 6.   And be it further enacted, That if any subscriber or subscribers, to the Capital Stock of the said Corporation shall neglect or refuse to pay any installment or installments on the number of shares which he or they may have subscribed, or the holders thereof, for the spare of twenty days after the same shall have been called for and appointed for the payment thereof by the Directors by an advertisement published for the space of two weeks in a newspaper published in Wilmington and one in the city of Philadelphia, previous thereto, that in such case the President and Directors may declare such share of stock forfeited and sell the same for the benefit of the Company, or they may, in the name of the Corporation, sue for and recover the sum or sums so remaining unpaid with costs and interest thereon, and that such delinquent shall not, during the time that any of the said installments aforesaid remain-

ing due and unpaid, be entitled to vote at any meeting of the Stockholders or receive any dividend thereon.

SEC. 7.  And be it further enacted, That it shall be lawful for the Legislature at any time hereafter, to alter, amend, modify or repeal this Act, and that this Act shall continue in operation for the period of twenty years and no longer.

. J. W. F. JACKSON,
Speaker of the House of ·Representatives.
M. R. CARLISLE,
Speaker of the Senate.

Passed at Dover, February 21, 1859.

THE COURT below, COMEGYS, C. J., charged the jury as follows:

1. That the charter of the corporation defendant, a copy of which is hereto annexed marked "A" provides, "That the business and concerns of said corporation shall be managed by seven Directors, who shall be stockholders, and shall be elected at each annual meeting of the stockholders."

The Directors had, in virtue of such provision, the right to settle and dispose of the claims of the Company, the same as any Directors have, in any Company, with such powers as these Directors had.  That the Directors of a Company, within the defined scope of their authority, are, virtually, the hand of the Company doing its business.

2. That whatever a corporation may lawfully do, can be done by its agents acting under its authority for that purpose.  It appearing that about eight-ninths of the stock of the Company was held by its Directors, if the jury should be satisfied from the evidence, that the said Directors agreed that the plaintiff should have

whatever he could collect from the United States Government upon the claim of the defendant against it, he bearing all the expense of the effort for such collection, then there was a valid legal agreement initiated between the parties, which was consummated when the plaintiff expended any money or rendered any service in the prosecution of the claim, which but for the understanding with the Company, he would not have spent or rendered; in other words, that the declaration of the Directors, sworn to by witnesses, that if he would proceed for the claim of the defendant and recover anything upon it, he might have it, was if the jury believe them, in the nature of an offer on their part, which when accepted by him by acting upon it and expending his time and money in the recovery of the claim, bound the Company whose officers they were, such agreement being within the scope of their authority as Directors according to the language and meaning of the charter of the Company.

3. That the Company could not legally assign its claim by gift or otherwise, to the plaintiff, still if the jury are satisfied from the evidence that he secured it by his efforts and expenditures in the production of the necessary proof, he is entitled to recover upon the count for money had and received; for the money received by the Company was his money and the Company cannot be allowed, in this action, or under such a count to shelter itself under any defence of the illegality of the contract *inter sese.*

4. The plaintiff may recover under the count for work and labor under the circumstances shown by the proof of the plaintiff, if the jury believe it, such proof being, that the Directors furnished the plaintiff, upon his request, with the means—through its books and accounts—of prosecuting the claim. If therefore, the Company would avail itself of the fruits of the plaintiff's work and labor and services, it should pay him what they were worth— the same as a man who sees another working in his corn field among other hired laborers, should pay him what his labor was

worth if the jury in such case should be satisfied that there was from the circumstances evidence of a hiring. That the question in the case in hand, as well as in that cited, was for the jury upon the facts proved.

*Anthony Higgins* and *William C. Spruance* for plaintiff in error :

The alleged agreement by the Directors of the Defendant Company that they would let the plaintiff have whatever he could collect from the United States Government upon the claim of the defendant against it, provided he bore all the expenses of its collection, was in violation of Section 3477 of the Revised Statutes of the United States, was illegal and void and no action could be maintained upon it.

The plaintiff could not under his contract have prosecuted in his own name, and for his own use, this claim against the Government, in any court, or before the Treasury Department. (*United States v. Gillis*, 95 U. S., 407.)

A voluntary transfer of a claim against the United States by way of mortgage, completed and made absolute by judicial sale, was held to be within the provision of the Statute, and a suit in the Court of Claims against the Government was on that ground dismissed. (*St. Paul R. Co. v. United States*, 112 U. S., 733.

An equitable assignment of a claim against the United States made before the claim was allowed or warrant issued was void under the Statute, and the assignee took no interest in the claim and acquired no lien in the fund arising therefrom. *Spofford v. Kirk*, 97 U. S., 484.

Though not technically or formally an assignment yet the agreement or transaction as stated by the Court below amounted to a " transfer " to the plaintiff of the defendant's claim against the Government and was prohibited by the Statute.

Even if this transaction was not a " transfer " or " assignment"

of the " claim "—but on the other hand was an " agreement that the plaintiff should have whatever he could collect from the Government upon it "—it was prohibited by the words of the statute which say that transfers and assignments not only of any " claim " shall be null and void, but also " of any part or share thereof, or " *interest therein,* whether absolute or *conditional,*" "and all " powers of attorney, orders, *or other authorities for receiving pay-* " *ment* of any such claim, or of any part or share thereof."

It will not be disputed that the " agreement that the plaintiff " should have what he could collect on the claim from the Govern- " ment," was a transfer of what he " could collect." Before the agreement he had no such right. After the agreement he did have it. It would be a mere juggle with words to say that this does not amount to a "transfer" from the Company to the plaintiff of a valuable right.

Now this right, the transfer of which was thus attempted was, if not the " claim " itself, or even, " any part " or share thereof," was certainly an " *interest therein.*"

But this right or " interest " thus secured by this "agreement" is made null and void by the Statute " whether absolute or *conditional,*" and it was subject to two conditions.

(1.) It was whatever the plaintiff could collect from the Government, and

(2.) It was upon " his bearing all the expense of the effort for such collection."

The Statute also makes null and void all " orders or *other authorities for receiving payment* of any such claim or any part or share thereof," and the " agreement " by which the plaintiff was to " have whatever he could collect," if sustained by the Court, would effectually operate as an " authority " by which the plaintiff would receive payment of the claim for a part or share thereof, to wit, whatever he could collect of it.

The transaction between the plaintiff and the Directors was a "transfer" of the claim, within the meaning and intent of the statute, because it was in terms and in fact a gift of it, by the Directors to the plaintiff.

The intention of Congress in the Act was to render all claims inalienable alike in law and in equity for every purpose and between all parties, and especially claims within the mischiefs designed to be remedied by the statute.

*Spoffard v. Kirk,* 97 U. S., 489; *Goodman v. Niblack,* 102 U. S., 559; *Trist v. Childs,* 21 Wall., 449.

The agreement was in violation of the policy of the statute and therefore void.

*Cook v. Pierce,* 2 Houst., 502; *Perkins v. Savage,* 15 Wend, 412; *Cannon v. Bryce,* 2 B. and Ald., 179; *Langton v. Hughes,* 1 M. and S., 594.

The intention of the statute is further shown by making null and void the transfer of a claim until after it has been allowed, the amount ascertained, and a warrant issued for its payment.

What becomes of this precaution for the protection of this Government, if by a valid agreement the claimant can vest in a stranger the right to every dollar of it the moment the claim is allowed.

The law will not enforce an agreement which accomplishes all the mischiefs intended to be remedied by the statute because of the mere form of the agreement. It will not permit to be done indirectly what it prohibits being done directly. *Newport Bank v. Tweed,* 4 Houston, 231.

The plaintiff's case is an attempt to enforce an illegal contract, and not one to assert title to money arising from an illegal contract.

The claim of the defendant against the Government, was a legal and valid one. The only illegality consisted in the attempted transfer of it to the plaintiff before it was allowed and its amount ascertained and in the form required by the statute.

The case therefore differs essentially from those where the *illegal transaction having ended a contract* " subsequent, collateral to, and wholly independent of, the illegal transaction upon which the principle contract was founded " has been sustained. Such were the cases of *Faikney v. Renons,* 4 Burr., 20, 69 ; *Petrie v. Hannay,* 3 T. R., 418 ; *Tenant v. Elliot,* 1 Bos. and P., 3 ; *Farmer v. Russel,* Id., 296 ; *Sharp v. Taylor,* 2 Phil. Ch. R., 807 ; *McBlair v. Gibbes,* 17 How., 235 ; *Brooks v. Martin,* 2 Wall., 70 ; *Newport Bank v. Tweed,* 4 Houst., 231.

But in the present case, the plaintiff has no claim against the proceeds of the claim *except through an illegal contract,* and therefore the case falls within the principle of *Thomson v. Thomson,* 7 Ves., 470.

The authority of *Faikney v. Renons* and *Petrie v. Hannay,* have been overruled.

*Anbert v. Maze,* 2 Bos. & Pul., 371 (per. Ld. Eldon.) ; *Cannon v. Bruce,* 3 B. & Ald., 179.

The plaintiff cannot recover in this case because he has to rely upon an illegal contract.

" Whenever the contract which a party seeks to enforce, be it " express or implied, is expressly or by implication forbidden by the " common or statute law, no Court will lend its assistance to give it " effect, and the test as to whether a demand connected with an " illegal transaction be capable of being enforced at law, is whether " the plaintiff requires to rely on such transaction in order to estab- " lish his case."

*Chitty on Contracts,* 579, 6th ed.; *Leake on Contracts,* 771, 774; *Thomson v. Thomson,* 7 Ves., 470 ; *Simpson v. Bloss,* 7 Taunt., 240; *Exparte Bell,* Maule & Sel., 751 ; *Fivaz v. Nichols,* 2 C. B., 512 ; *Taylor v. Chester,* L. R., 4 Q. B., 310; *Cannon v. Bryce,* 3 B. & Ald., 113; *Begbie v. Phosphate Co.,* L. R., 10 Q. B., 499 ; *Aubert v. Maze,* 2 Bos. & P., 373; *Pearc v. Provost,* 4 Houst., 467 ; *Perkins v. Savage,* 15 Wend., 412; *Nellis v. Clark,* 20 Wend., 24; *Collins v. Blantern,* 1 Smith's Lead., Cas., 699.

After the execution of the illegal contract or purpose the money paid under it whether, as consideration, or in performance of the promise cannot be recovered back, and the rule " applies in *pari delicto melior est conditio possidentis.*"

*Leake on Contracts,* 774 and cases cited: *Taylor v. Chester,* L. R., 4 Q. B., 314.

The plaintiff cannot recover under the count for work and labor.

1. Because the work done by the plaintiff he did for himself and not for the defendant.

2. Because the work was done under an illegal contract, namely, the prosecution of a claim against the Government of the defendant for the benefit of the plaintiff.

*Cannon v. Bryce,* 3 B. & Ald., 179; *Simpson v. Bloss,* Taunt., 246.

The agreement was beyond the powers of the Directors because it was in violation of Sec. 3477, U. S. Revised Statutes, and by it made null and void.

A contract or transfer of property by a corporation is absolutely void if declared void by a general law.

2 *Moranetz on Corp.,* Sec. 706.

It requires no argument to show that by incorporating an association, the Legislature does not intend to emancipate it from the general laws of the land.

*Ibid,* Sec. 32; *Thomas v. The West Jersey R. Co.,* 101 U. S., 86; *Marshall v. Balt. & Ohio R. R. C.,* 16 How., 314; *Oscanyan v. Arnis Co.,* 103 U. S., 261.

The agreement being a gift by the Directors to the plaintiff of this claim or its proceeds, the property of the shareholders, without the unanimous consent or ratification of the stockholders, was a misapplication of the property of the corporation, without authority from its charter, of which fact the plaintiff was fully aware, and was void against the Company.

Though the fact that a corporation had no legal right to enter

into a contract is held in some cases not to be ground for treating such contract void as against an innocent party having no notice of the excess of authority. Yet it renders void such a contract as against a party having notice of such excess of authority.

2 *Morawetz*, 686 ; *Mayor of Norwich v. Norfolk Ry. Co.*, 4 El. and Bl., 443 ; *East Anglican Ry. Co. v. Eastern Counties Ry. Co.*, 11 C. B., 775 ; *West St. Louis Sav. Bank v. Shawnee Co. Bank*, 95 U. S., 557 ; *Monument National Bank v. Globe Works*, 101 Mafs., 57 ; *Mining Co. v. Anglo California Bank*, 104 U. S., 192.

To make such a gift as is relied on in this case valid requires the consent or ratification of all the stockholders.

Where it does not appear that the stockholders expressly consented to, or ratified such gift, such consent or ratification cannot be implied without proof that the khowledge of such gift was brought home to all the stockholders.

*Morawetz on Corp.*, 618 ; 131 Mass., 258.

It is the duty of the Company to rescind an unexecuted contract or gift, if the same is *ultra vires*, or *prohibited by law*.

*Thomas v. West Jersey R. Co.*, 101 U. S., 86.

Whether the agreement was performed or not performed by the plaintiff on his part should have been left by the Court to the jury.

The Corporate Funds cannot be given away gratuitously.

The property and funds of a corporation belong to its shareholders, and cannot be devoted to any use which is not in accordance with the chartered purposes, except by unanimous consent.

No agent of a corporation has implied authority to give away any portion of the corporate property, or to create a corporate obligation grauitously.

*Salem Bank v. Gloucester Bank*, 17 Mass., 30 ; *St. James Church v. Church of the Redeemer*, 45 Barb., 356 ; *Frankford Bank v. Johnson*, 24 Me., 490 ; *Bissell v. City of Kankakee*, 64 Ill., 249 ; *Jones v. Morrison*, 31 Minn., 140 ; *Broadhead v. City of Milwau-*

*kee,* 19 Wis., 658 ; *Atty. Gen. v. Mayor & cq. Batley,* 26 L. T. N. S., 392; *Exparte Mellish,* 8 L. T. N. S., 47 ; *Bedford R. Co. v. Bowser,* 48 Penna. St., 29 ; *Hilles v. Parrish,* 14 N. J. Eg., 380 ; 1 Morawetz on Corp. Sect., 423.

It follows for the same reason, that authority can never be implied to lend the credit of a corporation without a consideration, or to sign its name to negotiable paper for the accommodation of others.

*West St. Louis Sav. Bank v. Shawnee Co. Bank No.* 95, U. S., 557 ; *Bank of Geneva v. Patchin Bank,* 12 N. Y., 309 ; *Morford v. Farmer's Bank,* 21 Barb., 566 ; *Savage Manuf. Co. v. Worthington,* 1 Gill., 284 ; *Ætna Nat. Bank v. Charter Oak Ins. Co.,* 50 Conn., 167 ; *Culver v. Reno Real Estate Co.,* 91 Pa. St., 367 ; *Beecher v. Dacey,* 45 Mich., 92 ; *Lafayette Sav. Bank v. St. Louis Stoneware Co.,* 2 Mo. App., 299.

*George Gray* and *E. G. Bradford* for defendant in error :

The judgment of the court below should not be reversed unless error is clearly disclosed upon the record ; for every presumption is to be made in support of the judgment.

*Perminter v. Kelley,* 18 Ala., 716 ; *Thompson v. Monrow,* 2 Cal., 99 ; *Wagers v. Dickey,* 17 Ohio, 439.

Nor will the judgment of the Court below necessarily be reversed because error has been committed, unless that error is of such a character as to seriously affect the party complaining of the judgment ; and if it appears that, upon the law and facts of the whole case as disclosed by the record, justice has been done by the Court below, the judgment will not be reversed on account of erroneous instructions.

*Gibbons v. Dillingham,* 10 Arkansas, 9 ; *Casteel v. Casteel,* 8 Blackford, 240 ; *Creevy v. Cummins,* 3 La. Ann., 163.

It is submitted that upon due examination no error will be discovered in the proceedings below.

There was consideration sufficient to support the contract, although the defendant might not receive any benefit from it.    For either benefit to the defendant or detriment to the plaintiff is sufficient consideration.

*Leake on Contrs.*, 611 ; *Addison on Contrs.*, 17, 18.

And it was not necessary that the contract should be created or evidenced either by the seal or the formal vote of the corporation.

*Bank of U. S. v. Danridge*, 12 Wheat., 64, 68, 69, 70, 72, 79, 80, 82, 83 ; *Morawetz on Private Corp.*, § 167 ; *Bank of Columbia v. Patterson's Admr.*, 7th Cranch, 299.

While it is generally true that Directors are not authorized to give away the property of the corporation, it is not universally true.

*Morawetz on Private Corp.*, § 233.

But the contract in this case cannot properly be considered as one giving away the property of the defendant.

Directors and stockholders considered the claim of the company against the United States absolutely worthless, declared " that there was no use in throwing good money after bad," and declined to prosecute the claim for the Company.    There was no contradiction in the testimony on this point.

The rule which generally prevents directors from parting with the property of their company without consideration must receive a reasonable construction ; and, so construed, it could not prohibit the directors from entering into the agreement in this case.

The claim did not appear to the directors to have any more value than a loose anchor at the bottom of the sea.

They considered it utterly without value and refused to prosecute it.

Unless the plaintiff had taken hold of it, in all human probability it never would have been realized.

The Directors had the right, and it was their duty to determine whether the claim of the company had any value in it.    They had the right to decline to prosecute claims that seemed to them to

be desperate, and to compromise claims that seemed to them to be doubtful.

*Morawetz on Private Corp.*, § 233.

But, upon the assumption that the agreement between the plaintiff and defendant can be properly considered as one giving away the property of the defendant, it is submitted that the Directors had authority to enter into it on behalf of the defendant.

But, even if the contract had originally been unauthorized by the defendant's charter, it not being forbidden by the charter or any other law, and having been executed by the plaintiff, is now to be treated as valid.

*Morawetz on Pri. Corp.* Secs. 85, 86, 100, 103, 104, 105, 107; *Hitchcock v. Galveston*, 96 U. S., 341, 350, 351; *Railway Co. v. McCarthy*, 96 U. S., 258, 257; *Township of Pine Grove v. Talcott*, 19 Wallace, 666, 678; *Gold Mining Co. v. Nat. Bank*, 96 U. S., 640, 641, 642; *Chester Glass Co. v. Dewey*, 16 Mass., 94, 102; *Whitney Arms Co. v. Barlow*, 63 N. Y., 62; *Oil Creek &c., R. R. Co. v. Penn. Trans. Co.* 83 Penn. St., 160; *Parish v. Wheeler*, 22 N. Y., 494; *State Board &c., v. Citizens' St. Railway Co.*, 47 Ind., 407; *National Bank v. Matthews*, 98 U. S., 621; *Steam Navigation Co. v. Weed*, 17 Barb., 378; *De Groff v. Am. Linen Thread Co.*, 21 N. Y., 124, 127; *Union Water Co. v. Murphey's Flat Fluming Co.*, 22 Cal., 620, 630; *Underwood v. Newport Lyceum*, 5 B. Monroe, 129; *Barst v. Gale et al.*, 83 Ill., 136, 140; *Bradley v. Ballard*, 55 Ill., 413, 417; *Argenti v. City of San Francisco*, 16 Cal., 255, 256, 264; *E. St. Louis v. E. St. Louis Gas L. and Coke Co.*, 98 Ill., 415; *Bank v. Hammond*, 1 Richardson (S. C.,) 281, 288; *Newburg Petroleum Co. v. Weare, et al.*, 27 Ohio St., 343, 354.

And it is immaterial whether in fact a person dealing with a corporation has had disclosed to him its want of corporate authority to perform the act or enter into the contract, for he is presumed to know the contents of its charter.

*Morawetz on Private Corp.*, § 64.

Therefore the rule above stated as to the binding force of executed contracts, unauthorized by charter, equally applies, whether the party dealing with the corporation in fact had or had not knowledge of its want of authority in that behalf.

Aside from from its legality, the contract having been executed on the plaintiff's part, and nothing remaining but a money payment on the part of the defendant, the common count for money had and received is proper.

2 *Greenl. on Ev.*, § 104; *Hurlock v. Copperthwaite*, 2 Hous., 550; *Bank of Columbia v. Pattersonson's Adm'r*, 7 Cranch, 299.

And the count for money had and received is peculiarly appropriate under the circumstances.

*Leake on Contrs.*, 87, 88, 104, Note c; *Moses v. Macferland*, 2 Burrows, 1005, 1008, 1010, 1012; *Guthrie v. Hyatt*, 1st Harr., 446.

The fourth assignment of error was:

"That the Court erred in not charging the jury according to "the prayers of the defendant company."

Some of the instructions prayed for by the defendant were manifestly improper. This assignment of error, being general, must therefore be overruled.

*Worthington v. Mason*, 101 U. S., 149.

It is not law, that in the absence of express consent or ratification, consent or ratification cannot be implied without proof that the knowledge of such gift was brought home to all of the stockholders."

*Private Corp.*, Secs. 79, 80.

*Hobbs v. McLane*, 117 U. S., Ct. Rep., 567; *Dillon v. Barnard*, 21 Wall, 430; *Trist v. Child*, 21 Wall, 441; *Hobbs v. McLane*, 117 U. S., 567; *Erwin v. United States*, 97 U. S., 392; *Goodman v. Niblack*, 102 U. S., 556; *Bailey v. United States*, 109 U. S., 432; *St. Paul R. R. v. United States*, 112 U. S., 733; *Hobbs v. McLane*, 117 U. S., 567.

The transaction between the plaintiff and defendant was not avoided by Sec. 3477.

But even if it were, as has already been shown, the defendant should not be permitted to retain the benefits that it has received.

SAULSBURY, Ch.

The action in the court below was *assumpsit.* The plaintiff's *narr,* contained two counts: one for money had and received, and the other for work and labor done. There was no count in the *narr,* upon any special contract. The jury in the court below heard the proof offered in support of these respective counts. They passed upon the sufficiency of that proof. Their judgment on this question was conclusive and final. This court has no jurisdiction to determine whether their verdict was right or wrong, and no power to review their finding upon a mere question of fact. This court, in affirming the judgment below, do so for the reason that the finding of the jury, under the second count, for work and labor done, being in favor of the plaintiff below, there was no error in the rendition of the judgment by the court below upon such finding of the jury. The court declines to render any decision upon any other questions raised in the cause in the arguments of counsel, because it considers such questions as irrelevant.