## HITCHCOCK *v.* GALVESTON.

1. Where a city council is vested with power to cause sidewalks in the city to be constructed, it may authorize the mayor, and the chairman of the committee on streets and alleys, to make, in its behalf, and pursuant to its directions, a contract for doing the work.

2. A provision in the charter, that the city council shall not borrow for general purposes more than $50,000, does not limit the debt of the city, nor prohibit the council from entering into a contract involving an expenditure exceeding that amount, for special improvements, such as the grading and paving of streets and the construction of sidewalks, which are authorized by the charter.

3. Such a contract is not rendered wholly inoperative because it provides that the work done under it shall be paid for in bonds of the corporation, the

issue whereof was not authorized by law. The contract, so far as it is in other respects lawful, remains in force; and for the breach thereof the corporation is liable.

4. The contract in question in this case construed, and the proviso therein, in reference to the consent of the owners of the property fronting or abutting on the pavements to be laid, held to have reference to the materials to be used in constructing them, and not to the execution of the work itself.

ERROR to the Circuit Court of the United States for the Eastern District of Texas.

The judgment in the court below having been given upon a demurrer to the plaintiffs' petition, there is no controversy about the facts.

The city of Galveston, proposing to improve some of its sidewalks, entered into a contract with Dexter G. Hitchcock and James W. Byrnes, the plaintiffs, by which they agreed to furnish the materials and in whole or in part to do the work necessary for the improvement. The work consisted of filling, grading, curbing, and paving. By ordinance, it had been determined that the sidewalks should be paved with one or the other of the following-described materials: "Asphalt, hard bricks laid in a bed of Portland cement and properly grouted, concrete made of Portland cement mixed with other proper materials, or with tile or stone laid in a bed of Portland cement." The ordinance contains a provision that the "owners of lots or parts of lots who represent in each block a majority of the feet fronting or abutting upon any sidewalk of the same which is to be paved" shall have the "right . . . to select and designate which of the said materials they prefer and desire to be used in the construction of the pavement to be laid down on the said designated sidewalk," reserving, however, to the chairman of the committee on streets and alleys the right to determine the material to be used in case the lot-owners failed to make a selection. Of course, grading, filling, and curbing were a necessary preparation to any of these different modes of paving; and the city ordinances made provision for these several kinds of preparatory work, as well as for the paving. It was in pursuance of these ordinances that the contract was made. By it, the city engaged, in the first instance, to pay to the plaintiffs the sum of $1.75, in bonds of the city, styled "Galveston city bonds for sidewalk improvements," to be taken at par, for every square

yard of pavement laid down by them upon certain designated sidewalks, the pavement to be composed of asphalt in bulk, rolled solid to the thickness of three inches ; provided, however, the plaintiffs " obtain the written consent of the owners of the property fronting or abutting upon the said sidewalks to the laying down of the said pavement, which written consent or selection of said pavement shall be filed in the mayor's office with the city clerk."

Following this conditional arrangement for an asphalt pavement, where such a pavement might be selected, the parties by the contract entered into other engagements. The city undertook to pay to the plaintiffs in the said bonds, to be taken at par, the sum of $1.25 for every cubic yard of filling necessary to be done " upon any and all of the said sidewalks preparatory to the laying of any pavement thereon," the above price to include not only the filling, but the grading, tamping, and rolling.

The contract next contained an engagement of the city to pay to the plaintiffs in the said bonds, to be taken at par, forty-five cents for each square foot of wooden curbing (to be composed or made of three-inch cypress) " that might be needed or used in filling up and grading the said sidewalks preparatory to putting down the said pavement, or any other."

The contract also bound the city to pay the plaintiffs for wooden curbing needed or used for putting down the pavements that were to be only six feet in width. In consideration of all these promises of the city, the plaintiffs bound themselves to lay down and fabricate the said pavement in the manner and style above set forth and stipulated ; and they also bound themselves to fill, grade, tamp, roll, and curb the said sidewalks as above set forth and stipulated, and to receive in payment for all the said work the respective prices above stated in Galveston city bonds for sidewalk improvement at par. They further bound themselves to commence the work within twenty days, and to finish it without unnecessary delay.

Accordingly, they proceeded to fulfil their engagements. They made contracts for labor and materials, performed a large amount of work, completed the curbing and filling of some sidewalks, and were going on in earnest to finish the entire work, when,

at the expiration of forty-six days, they were compelled by force and by authority of the city to abandon their work without any fault of their own. On the 20th of April, 1874, the city council declared the contract null and void, and directed the mayor to notify the contractors to that effect, which he did, two days thereafter. Hence the present suit to recover damages for the breach of the contract.

The demurrer to the petition was sustained, and judgment rendered for the defendants. The plaintiffs sued out this writ of error.

*Mr. F. Charles Hume* and *Mr. S. S. Henkle* for the plaintiffs in error.

Where a municipal corporation has power to do certain work, it may order its agents, for it and in its name, to enter into the requisite contract, which will be binding upon it. *Burrill* v. *The City of Boston*, 2 Cliff. 590; *Ford* v. *Williams*, 21 How. 287; *San Antonio* v. *Lewis*, 9 Tex. 69; *Bank of Columbia* v. *Patterson*, 7 Cranch, 299; *Dunn* v. *Rector of St. Andrew's Church*, 14 Johns. (N. Y.) 118; *Glidden* v. *Unity*, 33 N. H. 577; 2 Kent, Com. 290; Angell & Ames, Corp., sect. 212; *Fitton* v. *Hamilton City*, 6 Nev. 196; *Smiley* v. *Mayor, &c.*, 6 Heisk. (Tenn.) 604; Story, Contr., sect. 312; *Hoyt* v. *Thompson's Executor*, 19 N. Y. 207; *Abby* v. *Billups*, 35 Miss. 618; *Alton* v. *Mulledy*, 21 Ill. 76; Dillon, Mun. Corp., sects. 132, 374; Story, Agency, sect. 54; *Clark* v. *Mayor, &c. of Washington*, 12 Wheat. 40; *Fanning* v. *Gregorie et al.*, 16 How. 524; *Sharp* v. *Mayor, &c. of New York*, 25 How. (N. Y.) Pr. 388; *Dickerson* v. *Peters*, 71 Pa. St. 53; *Northern Central Railway Co.* v. *Mayor, &c. of Baltimore*, 21 Md. 93.

The absence of authority to issue the bonds does not impair the validity and obligation of the contract. They are merely evidences of indebtedness; and, if they are absolutely void, that indebtedness remains, and the city is liable upon the contract, and for damages occasioned by the breach of it. *State Bank* v. *Leavitt*, 14 N. Y. 162; *Leavitt* v. *Curtis et al.*, 15 id. 9; *Oneida Bank* v. *Ontario Bank*, 21 id. 490; *Argenti* v. *City of San Francisco*, 16 Cal. 255; *Maher* v. *Chicago*, 38 Ill. 266; *Chicago* v. *The People*, 48 id. 416.

By the contract, the city intended to incur a direct liability

to the contractor, and for payments made reimburse itself. by assessments upon, and in the event of their non-payment by sales of, the lots bordering upon the streets improved. Where, as in this case, there is no express limitation upon the power of the city, such a contract is valid. *Allen* v. *City of Janesville*, 35 Wis. 403; *Forltz* v. *Cincinnati*, 2 Handy (Ohio), 261; *Sleeper* v. *Bullen*, 6 Kan. 300; *Maher* v. *Chicago*, 38 Ill. 266; *Chicago* v. *The People*, 48 id. 416; *Louisville* v. *Hyatt*, 5 B. Mon. (Ky.) 199; *Kearney* v. *City of Covington*, 1 Metc. (Ky.) 339; *Swift* v. *Williamsburgh*, 24 Barb. (N. Y.) 427.

The city having so contracted, and failed or refused to make such assessments and collections with due diligence and pay the contractor, is liable to suit. *Baldwin* v. *Oswego*, 1 Abb. (N. Y.) App. Dec. 62; *Cummings* v. *Brooklyn*, 11 Paige (N. Y.), 596; *Allen* v. *City of Janesville, Forltz* v. *Cincinnati, Sleeper* v. *Bullen, Louisville* v. *Hyatt, Kearney* v. *Covington, Swift* v. *Williamsburgh*, and *Argenti* v. *City of San Francisco, supra.*

The provision that the council shall not borrow for general purposes more than $50,000 has no bearing whatever upon this contract for special improvements. *Cummings* v. *Brooklyn, Baldwin* v. *Oswego, Allen* v. *City of Janesville*, and *Argenti* v. *City of San Francisco, supra.*

*Mr. W. P. Ballinger* and *Mr. George Flournoy, contra.*

The city of Galveston had no express authority to make the contract in question, or to issue bonds in payment of the work done thereunder, and none can be implied from their general powers. *Police Jury* v. *Britton*, 15 Wall. 566; *The Mayor* v. *Ray*, 19 id. 468; *Williams* v. *Davidson*, 43 Tex. 1; Dillon, Mun. Corp., sect. 393. The contract to pay in such bonds for improvements of that description was therefore void. *Union Pacific Railroad* v. *Lincoln County*, 3 Dill. 300; *State* v. *Swift*, 11 Nev. 167; *Thomas* v. *Port Huron*, 27 Mich. 320; *Lucas et al.* v. *San Francisco*, 7 Cal. 463; *Roeck* v. *Newark*, 33 N. J. L. 129; *New Albany* v. *Sweeney*, 13 Ind. 245; *Johnson* v. *Indianapolis*, 16 id. 227; *McCullough* v. *Brooklyn*, 23 Wend. (N. Y.) 458; *Lake* v. *Trustees of Williamsburgh*, 4 Den. (N. Y.) 520; *Hunt* v. *Utica*, 18 N. Y. 442; *Swift* v. *Williamsburgh*, 24 Barb. (N. Y.) 427; *Baldwin* v. *Oswego*, 1 Abb. (N. Y.) App. Dec. 62; *Hale* v. *Kenosha*, 29 Wis. 599; *Bridge-*

*port* v. *New York & New Haven Railroad Co.*, 36 Conn. 255; *Alexander et al.* v. *The Mayor, &c. of Baltimore*, 5 Gill (Md.), 383; *Lansing* v. *Lansing*, 25 Mich. 207; *Ruppert et al.* v. *The Mayor, &c. of Baltimore*, 23 Md. 184; *Annapolis* v. *Harwood*, 32 id. 471; *Fairfield* v. *Ratcliff*, 20 Iowa, 396; *Head* v. *Providence Insurance Co.*, 2 Cranch, 127; *Zottman* v. *San Francisco*, 20 Cal. 96; *Nicholson Paving Co.* v. *Painter*, 35 id. 699; *Whitehall* v. *Pulaski County*, 2 Dill. 249; *Hall & Argalls* v. *County of Marshall*, 12 Iowa, 142; *Regents' University* v. *Hart*, 7 Minn. 61; *King* v. *Brooklyn*, 42 Barb. (N. Y.) 627; *Richardson* v. *Brooklyn*, 34 id. 569; Dillon, Mun. Corp., sects. 55, 610, 653, 654.

The contract, if valid, will impose upon the city a liability exceeding $50,000, and is therefore in violation of that provision in the charter of the city which prohibits the council from borrowing for general purposes more than that sum. *Rogers* v. *Burlington*, 3 Wall. 654; *Middleton* v. *Alleghany County*, 37 Pa. St. 237; *McPherson* v. *Foster*, 43 Iowa, 48; *State* v. *Strader*, 25 Ohio St. 527.

The contract sued on is not valid, because, 1. The city council could not delegate the power to the mayor and the chairman of the committee on streets and alleys to make it; 2. The said mayor, &c., still further delegated the power to determine the paving of said sidewalks to the owners of the lots thereon. Dillon, Mun. Corp., sects. 60, 567, 618, 649, and notes; *Lyon* v. *Jerome*, 26 Wend. (N. Y.) 484; *Danforth* v. *Paterson*, 34 N. J. L. 163; *State* v. *City of New York*, 3 Duer (N. Y.), 131; *Goszler* v. *Georgetown*, 6 Wheat. 593; *Hyde* v. *Joyes*, 4 Bush (Ky.), 468; *Mayor of Baltimore* v. *Porter*, 18 Md. 284; *Oakland* v. *Carpentier*, 13 Cal. 540; *Ruggles* v. *Collier*, 43 Mo. 353; *East St. Louis* v. *Wehrung*, 50 Ill. 28; *Day* v. *Green*, 4 Cush. (Mass.) 433; *Coffin* v. *Nantucket*, 5 id. 269; *Ruggles* v. *Nantucket*, 11 id. 433; *Ex parte Winsor*, 3 Story, 411; *Scofield* v. *Lansing*, 17 Mich. 437; *Schenley* v. *Alleghany*, 36 Pa. St. 62.

It results from the want of authority to bind the city by the contract sued on that there is no liability for the filling and curbing which it is alleged has been performed by the plaintiffs. Cooley, Const. Lim. 196; *Bonesteel* v. *Mayor of New York*,

22 N. Y. 162; *McDonald* v. *Mayor of New York*, 4 Thomp. & C. (N. Y.) 177, and cases cited; *Murphy* v. *Louisville*, 9 Bush (Ky.), 189; *Craycraft* v. *Selvage*, 10 id. 696; *Reilly* v. *Philadelphia*, 60 Pa. St. 467.

The contract was subject to the condition that the lot-owners fronting or abutting upon the sidewalks should select the kind of pavement, and that their written consent to laying it down should be obtained by the plaintiffs. The pleadings do not aver the performance of this condition, and without it the contract, even if authorized by the charter, was not binding upon the city.

Mr. Justice Strong, after stating the case, delivered the opinion of the court.

The demurrer to the plaintiffs' petition raises several questions, all relating to the validity or construction of the agreement between the parties. These questions were not all considered by the Circuit Court; but, as we are of opinion that court erred in giving judgment for the defendant, we cannot overlook any consideration that could justify such a judgment.

It is contended, on behalf of the defendants, that the city of Galveston had no power given to it by law to make the contract which was made, or bind itself to pay with the bonds described, for sidewalk improvements. The contract was made on behalf of the city by the mayor and the chairman of the committee on streets and alleys, who had been authorized and directed by ordinance "to enter into and make contract or contracts with proper and responsible parties to fill up, grade, curb, and pave the said sidewalks" (those designated in the ordinance and mentioned in the contract); and, as the petition of the plaintiffs averred, it was ratified and approved by the city council as the act and deed of the defendant. The authority of the council is found in the charter of the city. The first section of tit. 9, art. 1, of the charter declares that the city council shall be invested with full power and authority to grade, shell, repair, pave, or otherwise improve any avenue, street, or alley, or any portion thereof, within the limits of said city, whenever by a vote of two-thirds of the aldermen present they may deem such improvement to be for the public interest.

And sect. 8, art. 3, tit. 4, confers upon the city council power
" to establish, erect, construct, regulate, and keep in repair
bridges, culverts and sewers, sidewalks. and crossways, and to
regulate the construction and use of the same ; " and the section
adds, that " the cost of the construction of sidewalks shall
be defrayed by the owners of the lot, or part of lot or block
fronting on the sidewalk, and the cost of any sidewalk constructed by the city shall be collected, if necessary, by the sale
of the lot, or part of lot or block on which it fronts, together
with the cost of collection, in such a manner as the city council may, by ordinance, provide ; and a sale of any lot, or part
of lot or block, to enforce collection of cost of sidewalks, shall
convey a good title to the purchaser, and the balance of the
proceeds of sale, after paying the amount due the city, and
cost of sale, shall be paid by the city to the owner."

The city is thus authorized itself to construct sidewalks, and,
though the cost of construction is to be defrayed by the abutting lot-owners, the city is to collect from them the cost, and,
in case of the sale of any lot made to enforce the collection,
the city is to pay to the owner the surplus of any proceeds of
sale remaining after payment of the amount due to it. It is
not to be denied that this section confers upon the city council
plenary authority to construct the sidewalks, and to do whatever is necessary for the construction, not prohibited by some
other provision of law. The resort to the lot-owners is to be
after the work has been done, after the expense has been
incurred, and it is to be for reimbursement to the city.

If the city council had lawful authority to construct the
sidewalks, involved in it was the right to direct the mayor,
and the chairman of the committee on streets and alleys, to
make a contract on behalf of the city for doing the work. We
spend no time in vindicating this proposition. It is true, the
council could not delegate all the power conferred upon it by
the legislature, but, like every other corporation, it could do its
ministerial work by agents. Nothing more was done in this
case. The council directed the pavements, ordering them to be
constructed of one or the other of several materials, but giving
to the owners of abutting lots the privilege of selecting which,
and reserving to the chairman of their committee authority to

select, in case the lot-owners failed.   The council also directed how the preparatory work should be done.   There was, therefore, no unlawful delegation of power.   But, if there had been, the contract was ratified by the council after it was made.   A sufficient ratification, if any was necessary, is averred in the petition, and again and especially in the amended petition.

Another objection to the validity of the contract, urged by the city, is founded upon a provision of the charter, that the council shall not borrow for general purposes, more than $50,000; and it is said the contract, if valid, creates a liability of the city exceeding that sum.   This, however, does not appear in the contract itself, and this, perhaps, is a sufficient answer to the objection.   But the limitation is upon the power to borrow money, and to borrow it for general purposes. It implies that there may be lawful purposes, which are not general in the sense in which that word is used in the charter. An examination of the whole instrument, and of the numerous and large powers conferred upon the council, as well as duties imposed, makes it evident that the provision could not have been intended to prohibit incurring an indebtedness exceeding the sum named.   It is in no sense a limitation of the debt of the city.   If it is, the grant of power the charter contains was an idle thing, and the duties imposed could not be performed. The council, as we have seen, is empowered to grade and pave the streets and to construct sidewalks.   There is no express limitation of these powers.   Their exercise necessarily involves large expenditure.   Such expenditure is, therefore, authorized. It is a plain incident of the power, and it is a special expenditure.   It is for a new work, unlike the work of keeping in repair.   Conceding that it is a purpose of the act incorporating the city, it cannot be regarded as a general purpose; for, if it is, all purposes of the charter are general.   Grading a street or making a sidewalk, where none had existed before, is a special improvement, not like repairs of constant recurrence.   By another article of defendant's charter, the city council was authorized to provide by ordinance special funds for special purposes, and to make the same disbursable only for the purpose for which the fund was created.   For these reasons, we are of opinion that the limitation upon the power of the coun-

cil to borrow for general purposes did not make the agreement with the plaintiffs invalid.

We come now to objections which the Circuit Court sustained. The learned judge held the contract inoperative, because by it the city agreed to pay for the work to be done, and the contractors agreed to receive in payment, at par, bonds of the city, denominated " Galveston city bonds for sidewalk improvement." These bonds were, by the ordinance that authorized their issue, made payable to bearer fifteen years after date; and the money realized from assessment on property fronting on sidewalks improved by means of their disposition was declared to be a special fund, and appropriated solely as a sinking fund for their redemption. The issue of such bonds was held by the court to be transgressive of the power of the city, and the ruling was thought to be supported by the decision of this court in the cases of *Police Jury* v. *Britton,* 15 Wall. 566, and *The Mayor* v. *Ray,* 19 id. 468.

In the view which we shall take of the present case, it is, perhaps, not necessary to inquire whether those cases justify the court's conclusion; for, if it were conceded that the city had no lawful authority to issue the bonds, described in the ordinance and mentioned in the contract, it does not follow that the contract was wholly illegal and void, or that the plaintiffs have no rights under it. They are not suing upon the bonds, and it is not necessary to their success that they should assert the validity of those instruments. It is enough for them that the city council have power to enter into a contract for the improvement of the sidewalks; that such a contract was made with them; that under it they have proceeded to furnish materials and do work, as well as to assume liabilities; that the city has received and now enjoys the benefit of what they have done and furnished; that for these things the city promised to pay; and that after having received the benefit of the contract the city has broken it. It matters not that the promise was to pay in a manner not authorized by law. If payments cannot be made in bonds because their issue is *ultra vires,* it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law. The contract between the parties is in force, so far as it is lawful.

There may be a difference .between the case of an engage-
ment made by a corporation to do an act expressly prohibited
by its charter, or some other law, and a case of where legisla-
tive power to do the act has not been granted. Such a distinc-
tion is asserted in some decisions. But the present is not a
case in which the issue of the bonds was prohibited by any
statute. At most, the issue was unauthorized. At most, there
was a defect of power. The promise to give bonds to the
plaintiffs in payment of what they undertook to do was, there-
fore, at farthest, only *ultra vires;* and, in such a case, though
specific performance of an engagement to do a thing transgres-
sive of its corporate power may not be enforced, the corpora-
tion can be held liable on its contract. Having received bene-
fits at the expense of the other contracting party, it cannot
object that it was not empowered to perform what it promised
in return, in the mode in which it promised to perform. This
was directly ruled in *The State Board of Agriculture* v. *The
Citizens' Street-Railway Co.,* 47 Ind. 407. There it was held,
that " although there may be a defect of power in a corpora-
tion to make a contract, yet if a contract made by it is not in
violation of its charter, or of any statute prohibiting it, and
the corporation has by its promise induced a party relying on
the promise and in execution of the contract to expend money
and perform his part thereof, the corporation is liable on the
contract." See also, substantially to the same effect, *Allegheny
City* v. *McClurkin,* 14 Pa. St. 81; and, more or less in point,
*Maher* v. *Chicago,* 38 Ill. 266; *Oneida Bank* v. *Ontario Bank,*
21 N. Y. 490; *Argenti* v. *City of San Francisco,* 16 Cal. 256;
*Silver Lake Bank* v. *North,* 4 Johns. (N. Y.) Ch. 370.

We think, therefore, the Circuit Court erred in holding the
contract of the city with the plaintiff invalid.

Nothing remains but to consider the extent of the proviso
following the first clause of the agreement. It is insisted on
behalf of the city, and it was so held by the circuit judge, that
the proviso was a condition precedent to the performance of
any part of the work, and was required to be performed before
any part of the contract became binding on the city. Such is
not our construction of the contract. The petition of the
plaintiffs, with its amendments, sets forth the ordinances of

the city, and avers that the city, contemporaneously with this contract, made various other contracts with other parties for paving the sidewalks named, with the various materials respectively therein named, each conditioned, as was the contract with the plaintiffs, that the lot-owners should select the kind of pavement, whether asphalt or some other kind, directed by the ordinance. The plain object of this proviso was to save to the lot-owners the privilege given to them by the ordinance directing the pavements to be constructed. They were to be constructed, at all events, of one or the other of certain specified materials, and the lot-owners were allowed to select which. If in any block they preferred brick, the contractor for brick paving was to put down that kind of paving. If they preferred asphalt, the contractor for asphalt was to pave with that material. But the ordinance gave to the lot-owners no liberty of choice whether there should be a pavement or none, or whether the sidewalks should be filled, graded, curbed, and prepared for a pavement of some kind, or not. That was determined by the council. That work was absolutely directed to be done. And the contract, we think, followed the ordinance. In it the undertakings of the plaintiffs for paving, filling, grading, tamping, rolling, and curbing are kept distinct from each other, and it is only to laying down an asphalt pavement that the proviso required the consent of the lot-owners. No other construction is consistent with the other parts of the contract. The proviso follows immediately the provision for the asphalt pavement. It is succeeded by arrangements for the filling, grading, and rolling, in the language of the parties, "necessary and needed to be done upon any and all of the said sidewalks, preparatory to the laying of any pavement thereon." The contract, so far as it relates to the next subject, is still more significant. We refer to the agreement for the wooden curbing that might be needed or used in filling up and grading the said sidewalks, "preparatory to the putting down of the said pavement, or any other." From this it is evident the parties contemplated that the plaintiffs should do the preparatory work upon all the sidewalks intended to be improved; namely, the work needed to put those sidewalks in a fit condition to receive any one of the pavements prescribed

by the ordinance: Which one should crown the preparatory work was to be left primarily to the selection of the lot-owners in each block. If a majority of them chose asphalt, the plaintiffs were to do the work. If a majority chose some one other of the materials allowed in the ordinance, the contractor for a pavement made of that other material was to construct that pavement. The filling and curbing was to be done by the plaintiffs in any event, and it was only the paving thereafter respecting which the lot-owners had any voice.

This suit has not been brought for paving, nor for any breach of the defendant's contract respecting the paving. The claim is for damages caused by the abrogation or breach of the city's contract relating to other and distinct subjects. Hence it was not necessary to aver any consent of the owners of the property abutting upon the sidewalks.

We are, therefore, of opinion that the original and amended petitions sufficiently set forth a cause of action, and that the Circuit Court erred in sustaining the defendant's demurrer.

The judgment will be reversed, and the record remitted, with instructions to give judgment on the demurrer against the defendant; and it is .

*So ordered.*

MR. JUSTICE BRADLEY, with whom concurred MR. JUSTICE MILLER and MR. JUSTICE FIELD, dissenting.

I dissent from the judgment of the court in this case, being of opinion that the proviso requiring the assent of the property holders related to the entire work around each block, and not merely to the kind of pavement to be used; and that the contractors had no authority to do any work on any particular block, without such previous assent.