### BARBER ASPHALT PAVING CO. v. CITY OF HARRISBURG.

(Circuit Court of Appeals, Third Circuit.   November 13, 1894.)

CITIES—PAVING CONTRACTS—PAYMENT IN INVALID ASSESSMENTS.

Where a city having authority to pave its streets and pay therefor from its treasury, and supposing that it had authority also to assess the cost on abutting property and transfer the assessments in payment for the work, contracts with a person, who also supposed it had such authority in regard to assessments, to do such paving, and to pay him by assigning the assessments to him, the city, not having in fact any authority to make the assessments, will be liable on the contract for the work, though it is stipulated that the assessments shall be accepted in payment, and that the city shall not be otherwise liable under the contract, whether the assessments are collectible or not.  62 Fed. 565, reversed.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by the Barber Asphalt Paving Company against the city of Harrisburg on a contract for street paving.   Defendant had judgment (62 Fed. 565), and plaintiff brings error.   Reversed.

Charles H. Bergner and A. S. Worthington, for plaintiff in error.
William H. Middleton, for defendant in error.

Before ACHESON, Circuit Judge, and BUTLER and WALES, District Judges.

BUTLER, District Judge.   The plaintiff, a citizen of West Virginia, and the defendant, of Pennsylvania, entered into a contract on August 13, 1887, which contained the following provisions:

"The said The Barber Asphalt Paving Company to furnish all tools, implements, materials and labor, and complete to the satisfaction of the city engineer of the city of Harrisburg all such work as may be requisite to pave and curb Market street from the eastern curb line of Front street to the Pennsylvania Railroad; to begin the work under this contract upon five days' notice from the city engineer and complete the same within ninety days from the com-

mencement of said work. The pavement to be laid as aforesaid under this contract to consist of a cement concrete base at least six inches thick, covered with a wearing surface of asphaltum at least two and a half inches thick; the curbing to be of granite; the materials to be of the very best kind obtainable, and the pavement to be laid and all the work to be done thereon in accordance with the plans and specifications prepared by the city engineer, and hereto attached, which plans and specifications are hereby made part of this contract.

"And the city of Harrisburg on its part, will pay to the said the Barber Asphalt Paving Company in accordance with the specifications and out of the assessments made and levied for the purpose, the following prices: For each and every square yard of pavement laid under this contract, the sum of two dollars and seventy-five cents ($2.75), for each and every lineal foot of granite curbing the sum of one dollar and fifty cents, ($1.50), but only upon the measurements of the city engineer, and at such intervals and in such installments as he may determine.

"It is also understood and agreed that the payments aforesaid provided for shall be paid as follows: First, out of the amount of the assessments paid into the city treasury by the property owners, and when that fund is exhausted, then the city of Harrisburg will assign to the said the Barber Asphalt Paving Company, the municipal claims assessed and levied upon the properties abutting on and along the said Market street between the points above mentioned, or mark the same of record to the use of the said company, and also permit the use of the corporate name of the said city in any legal proceedings necessary or proper to enforce the collection of the said assessments.

"It is also understood and agreed that the said company shall accept the said assessments in payment of the amount due it under this contract, and the city shall not be otherwise liable under this contract whether the said assessments are collectible or not."

The plaintiff performed its part of the contract, and received on account $13,470.59, paid from assessments, leaving $21,729.92 of the contract price unsatisfied.

At the date of the contract the defendant had authority to pave its streets, and pay for the same from its treasury. It believed it had authority also to assess the cost of such paving on abutting properties, and transfer the obligations thus created in payment for the work. The plaintiff had no reason to doubt the correctness of this belief. The legislature by an act of May 24, 1887, had provided for such assessments. The supreme court of the state, however, after the work had been completed declared the act invalid. Shoemaker v. Harrisburg, 122 Pa. St. 285, 16 Atl. 366; Berghaus v. Harrisburg, 122 Pa. St. 289, 16 Atl. 365; Ayers' Appeal, 122 Pa. St. 266, 16 Atl. 356. The defendant went through the form of making assessments; and the property holders paid $13,470.59, before the invalidity of the statute was discovered. They refused, however, to pay more; and, the defendant denying liability for the balance due under the contract, this suit was commenced to recover it.

On demurrer filed to the plaintiff's statement the circuit court rendered judgment for the defendant; whereupon the plaintiff appealed, and assigned this action of the court as error.

Is the defendant liable? The suit is on the contract, and the liability must be found in it, if at all.

As we have seen the defendant had power to contract for paving its streets, at the cost of its treasury. It did not however, so contract, in terms. Is it liable to pay from this source in conse-

quence of the terms used and the facts stated? It undertook to pay the price specified by assessments, and the plaintiff agreed to accept these in discharge of its claim, adding that "the city shall not be otherwise liable whether the assessments be collectible or not." Omitting the language just quoted there could be no doubt of the defendant's liability. The case would be identical, in all respects, with Hitchcock v. Galveston, 96 U. S. 341. The language quoted does not however, we think, add anything to the force or effect of that which precedes it. It simply expresses what would be implied in its absence. The agreement to accept the assessments in payment relieved the city from liability to pay otherwise. By it the plaintiff assumed the risk of collecting. If the defendant, in such case, had made and transferred the contemplated assessments, it would have discharged its entire obligation; just as it would in the present case. This, however, it has not done. Its attempt to do it failed; its acts in this respect were a nullity. It is immaterial that the failure resulted from want of authority—as it would be if it resulted from any other cause beyond its control. It undertook, unconditionally, to make and transfer assessments, and its failure is a breach of the contract. To say its obligation is discharged by a vain attempt to make them; that the plaintiff is bound to accept useless forms of assessments, is unreasonable. The parties contemplated valid charges on the property. The term *"assessment"* clearly implies this; nothing short of a lawful assessment—one capable of enforcement, satisfies it. It was such assessments the plaintiff agreed to accept, and assumed the risk of collecting. The parties were mutually mistaken respecting the authority to pay in the special manner designated; but this does not relieve the defendant from its obligation to pay.

If anything is wanting to render this construction clearer, it may be found in the fact that the language involved is taken, word for word, from the statute, and must necessarily signify here what it does there. There the term "assessment" signifies, and can only signify a proceeding which creates a charge on the property specified The statute first provides for this proceeding and charge, and then for its transfer to the contractor. It is *this charge* which is to be transferred, and which the contractor is to assume the risk of collecting. There is always some risk attending such collections. Prior liens, or other causes, may render the property insufficient to pay. And this only is the risk the statute, and the contract made under it, contemplated.

The defendant having failed to make the required assessments is in default upon its contract, and must make reparation by paying the consequent loss. There is no hardship in it, and if there was it would afford no justification or excuse for shifting it to the plaintiff. The defendant has received full value for what he is required to pay; and if the contract admitted of another construction we would strongly incline to the one adopted, because it is not only consistent with the intention of the parties, but avoids the great injustice of allowing the defendant to hold and enjoy the plaintiff's property without paying for it.

There is abundant authority for this construction. Hitchcock v. Galveston, 96 U. S. 341, is in point. The city contracted with Hitchcock to do certain work upon its streets, for which he was to accept its bonds in payment. It had, however, no authority to issue the bonds, and, discovering this while the work was in progress, stopped it and declined to pay for what was done, on the ground that the contractor had bound himself to depend upon this source of payment alone. The court, deciding that the contract contemplated and required valid bonds, and that the city had failed to furnish such, held the contract broken, and the city liable to pay from its treasury. In principle this case is not distinguishable from the one before us. The court says:

"It is enough that the city council had power to enter into the contract for the improvement, that such a contract was made, that the plaintiff has proceeded to furnish materials and do the work, as well as assume liabilities, that the city has received and now enjoys the benefit of what he has done and furnished; that for these things the city promises to pay; and that after having received the benefit of the contract the city has broken its promise. It matters not that the promise was to pay in a manner not authorized by law. If the payment cannot be made in bonds because their issue is ultra vires it would be sanctioning rank injustice to hold that payment need not be made at all."

White v. Snell, 5 Pick. 425; Hussey v. Sibley, 66 Me. 192; Miller v. Milwaukee, 14 Wis. 705; Bill v. City of Denver, 29 Fed. 344,—involved the same question, and were similarly decided. In Chicago v. People, 56 Ill. 327; Maher v. Chicago, 38 Ill. 272; Louisville v. Hyatt, 5 B. Mon. 200; Fisher v. St. Louis, 44 Mo. 482; and Scofield v. City of Council Bluffs, 68 Iowa, 695, 28 N. W. 20,—the contractor distinctly agreed to look to assessments alone for payment; and yet the municipalities, having no authority to make them, were held liable to pay otherwise.

The numerous authorities cited by the defendant are not inconsistent with this construction. Peake v. New Orleans, 139 U. S. 342, 11 Sup. Ct. 541, is based upon an essentially different state of facts. The city was not a party to the contract sued on, and in no wise responsible for it. The work was done under a scheme devised by the state legislature, and under a contract with officers designated by it, for the drainage of swamp lands, (a part only of which was within the city limits) for the benefit, primarily, of its owners. A careful examination of this case will show that it rests exclusively on these facts—though the last paragraph of the syllabus, read alone, would justify a different conclusion.

Horter v. Philadelphia, 13 Wkly. Notes Cas. 40, and Dickinson v. Philadelphia, 14 Wkly. Notes Cas. 367, as we understand them, rest on the same principle. In the first the improvement was made under the state statute of 1855, which provides that the cost of such work shall be borne by adjoining property holders. There was no authority, as it seems, to put it on the city. While the opinion of the court, and report of the case, are very brief, the decision appears to rest on this ground. If it were otherwise the case would be in direct conflict with Chicago v. People, 56 Ill. 327. In Dickinson v. Philadelphia, 14 Wkly. Notes Cas. 367, the city appears to have had no connec-

tion whatever with the work. The statute under which it was done designated an officer to do it, empowering him to make contracts and collect money to pay the cost. That he held the office of city commissioner of highways is immaterial; he was the agent of the state in discharging his duties under the statute. Here again the opinion of the court is very brief, and the report of the case so meager, that it was necessary to examine the records to understand what was decided—which we found to be no more than just stated.

The numerous other cases cited are equally inapplicable. In Belleview v. Hohn, 82 Ky. 1, the municipality was without authority to pay except by assessments on adjoining properties. Saxton v. St. Josephs, 60 Mo. 153, rests on the city's want of power to contract as it did. Casey v. Leavenworth, 17 Kan. 198, was decided on the fact that the city had kept its contract, by collecting and applying the assessments named, with reasonable vigilance. Newman v. Sylvester, 42 Ind. 106, was a suit against individuals, and is inapplicable to the facts involved here. Other cases cited may be distinguished as easily.

The judgment is therefor reversed, and the case remanded to the circuit court for further proceedings.