## GILLETTE–HERZOG MFG. CO. v. CANYON COUNTY.

(Circuit Court, D. Idaho. C. D.    February 4, 1898.)

1. COUNTIES—CONSTITUTION—CONTRACTS IN EXCESS OF INCOME—BRIDGES.
   Under Const. Idaho, art. 8, § 3, providing that no subdivision of the state shall incur any indebtedness exceeding in that year the revenue provided for it for such year without the assent of the voters at an election for that purpose, a contract, made by county commissioners without obtaining the consent of the people at an election, for the erection of a bridge at a cost of $14,000, where the excess of the revenue over the other expenditures for that year cannot possibly be more .than $4,525, is void in toto.

2. VOID CONTRACT—ULTRA VIRES—IMPLIED PROMISE TO PAY.
   Where a bridge has been constructed under a contract with county commissioners which is void because the surplus revenue for that year is insufficient to pay therefor. although it was constructed in good faith, and has been accepted by the county, which has had the benefit thereof, no implied promise to pay the value thereof can be inferred.

3. PROPERTY IN CONSTRUCTION ERECTED UNDER A VOID CONTRACT.
   A bridge constructed under a void contract with county commissioners, although accepted and used by the county, remains the property of the builders, when the county refuses to pay therefor.

Fremont Wood and Edgar Wilson, for plaintiff.
John C. Rice, H. A. Griffiths, and John P. Davis, for defendant.

BEATTY, District Judge.    This action is against Canyon county upon a contract entered into September 5, 1894, by its board of commissioners with plaintiff, for the building of two bridges at the contract price of about $14,000.    By written stipulation of the parties, a trial by jury having been waived, the same was heard by the court.    The defense to the action is that the contract is void because the board of commissioners did not comply with the statute of the state governing such transactions, and that it was in violation of section 3, art. 8, of the constitution, which is as follows:

"No county, city, town, township, board of education, or school district, or other subdivision ·of the state shall incur any indebtedness or liability in any manner or for any purpose, exceeding in that year the income and revenue provided for it for such year, without the assent of two thirds of the qualified electors thereof voting at any election to be held for that purpose; nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general law of the state."

1. Concerning this provision, the argument of plaintiff's counsel appears to be that it is not violated if the county expenses allowed for that year up to the date of the bridge contract, and the amount incurred by such .contract, do not together exceed the total revenue levied for that year.    This is not the effect given to this provision by the state supreme court, and such a construction would wholly eliminate from it its protecting design, and permit county commissioners to enter into the most reckless contracts.    What thus might be done is so evident that illustrative examples are not needed.    As has been held, and. as is clearly so, its object is to put the municipal organizations there-

in named upon a cash basis. This happy consummation would never occur in this country, the experience of the past being any guide, if the plaintiff's views prevail. The object of this provision is not obscured by any doubt. After deducting from the revenue to be collected for the year all expenses already paid, and all other known debts or liabilities, including ordinary and necessary expenses yet to be paid during that year, the balance measures the limit within which other debts may be contracted. Such is the view of the supreme court of the state in Bannock Co. v. Bunting (Idaho) 37 Pac. 279, approved in subsequent decisions, as well as of other courts in the construction of similar provisions. It was the duty of the parties who entered into this contract to first learn the amount of revenue levied for the year 1894, then deduct therefrom all debts for which the county was liable that year, the expenses already paid, and estimate the balance to be paid for the year, and, if a sufficient balance were left to cover the proposed contract, they might have made it. If urged that the probable expenses for the balance of the year could not be safely determined, it may be answered that they might have been approximately by those already known, or by those for like periods of prior years; but to disregard them would open the avenue to the contraction of debts, for the payment of which there would be no funds. However, the constitutional provision exists, and doubt may always be removed by compliance with its direction to submit to a vote of the people. The estimate which the parties should have made will now be made for them. The assessed revenue for the year 1894 was $56,825.74. Canyon county's liabilities for that year were: Due to the state fund, $17,157.16; due to the school fund, $9,587.34; due on court-house bonds, $2,109.04; due on Boisé Bridge bonds, $1,145.66; due on Payette Bridge bonds, $501.26,—$30,500.46. It is said that it is not shown that some of the above-named debts were paid that year by the county. It is shown that the county owed them, which is sufficient.

A question has arisen whether the expenses allowed at the January term, 1894, by the board, should be included as part of the expenses of 1894; but, as they were contracted in 1893, they should be treated as belonging to that year. The ordinary and necessary expenses for that year allowed prior to September 5th, and at the April and July terms, were the total sum of $15,509.59. Estimating for the two following terms the same, the total ordinary and necessary expenses for the year would be $31,019.18, which, added to the other liabilities of $30,500.46, above named, would make the total of $61,519.64, or $4,693.90 in excess of the revenue. But it subsequently appeared that the total ordinary expenses allowed at the October, 1894, and January, 1895, terms, were $6,290.09, instead of $15,509.59; thus making the total expenditures and liabilities for the year, exclusive of this bridge contract, $52,300.14, being $4,525.60 less than the revenue. This latter amount, therefore, is the only margin upon which plaintiff can base its contract, giving it the benefit of all facts that occurred after its contract, and estimating the expenses in the most favorable light for it that can be asked. Were the January, 1894, allowances, instead of the January, 1895, included, the difference against plaintiff would be $6,675.01, or an excess of liability over the revenue of $2,-

149.41. As the contract is not such as is susceptible of such division that plaintiff can have the benefit of the possible margin of $4,525.60, named (Hedges v. Dixon Co., 150 U. S. 183, 14 Sup. Ct. 71), it must be held as made in violation of the constitution, was therefore without authority, and is absolutely void. It may be added that the board seems not to have followed very closely the provision of the general statute governing such contracts, but it is deemed unnecessary to enter into any discussion upon this question.

2. Plaintiff's counsel further say that, if the contract was not authorized, yet, as the defendant made it, as the bridges were constructed in pursuance of it, as there was no fraud in the transaction, and as defendant accepted the bridges, and has since had the benefit thereof, it must pay for them their fair value as upon an implied contract, and, as in support of this view, cite, among other authorities, Pacific Bridge Co. v. Clackamas Co., 45 Fed. 218; Barber Asphalt Paving Co. v. City of Harrisburg, 12 C. C. A. 100, 64 Fed. 283; Hitchcock v. Galveston, 96 U. S. 341; and Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121. If such is the law, it follows that this constitutional provision is utterly useless. In open defiance of it, reckless officials could burden the people with bankruptcy. Surely, the fundamental law of the state cannot be so easily overthrown. Will the authorities cited be found, upon careful examination, to sustain counsel's views? By such examination it will be found that there was reason in each case why the contract was not absolutely ultra vires; that, while there was authority for making, only some irregularity occurred in the mode of compliance or payment. Payment has also been enforced when there was no authority for the contract, but no direct prohibition of it. In the case of Hitchcock v. Galveston, supra, the court found there was undoubted authority in the city council to make the contract in question, but not the authority to issue bonds in payment, as was attempted; and, as the city had the power to procure the work done, it was held it should pay for it, although not in the mode agreed upon. So, in Barber Asphalt Paving Co. v. City of Harrisburg, supra, the city had the power to make the contract which they did, to be paid for by assessment upon the abutting property, which, at the time, was according to a law of the state, but which was subsequently held void by the supreme court of the state. It was held that the city itself must pay. Whatever may be drawn from these authorities, the case of Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, is decisive of this case. Waterworks had been constructed, and bonds issued in payment, which having been held void because issued in violation of a constitutional provision similar to ours, it was asked that the city be required to refund the money paid for them or surrender the waterworks. The court distinctly held that, the contract having been made in violation of the constitution, there was "no more reason for a recovery on an implied contract to repay the money than on the express contract found in the bonds," and granted no relief whatever, not even surrendering to him the waterworks, for one among other reasons, that other money than plaintiff's had entered into their construction. It may be noted that this case is approvingly cited in Hedges v. Dixon Co., 150 U. S. 183, 14 Sup. Ct. 71, supra. The distinction between the two classes of

cases is that when there is authority to make the contract, but some irregularity has occurred in its provision for payment or any other irregularity, which does not turn upon the power to make it, and a corporation has received the benefit of work done, it may be compelled to pay for it; but, when the contract is absolutely and directly prohibited by some statutory or constitutional enactment, the contract is void, and it cannot be enforced either as an express or implied contract; and so it must now be held of the one in question.

Defendant's counsel, in their brief, say that "the bridges remain, as they have always been, the property of plaintiff." With that view the court agrees, and now so holds. Certainly, this conclusion is a hardship upon plaintiff, which the court regrets, for it appears that the bridges were honestly constructed, and at a fair price; plaintiff says, below cost. While courts prefer enforcing contracts when honestly made and complied with, and to require all parties to pay for what they have the benefit of, yet they cannot and should not disregard such positive constitutional prohibitions as warned the parties in this case against the consummation of this contract. Unfortunately, there is so much ardor in the commercial world to transact business that the heed which should be given the law is obscured by the enticing profits of a business transaction. Important constitutional provisions for the protection of the people—and there is none upon the statute books of Idaho more important than the one in question—must be enforced, and those who are so heedless as to violate them must bear the consequences. Judgment for defendant.