NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD. COMPANY v. THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

Argued February Term. 1914—Decided July 10, 1914.

The facts in this case present a public work done for the benefit of the city, at the instance of its officials under a written contract, not *ultra vires*, which the city contends was irregularly executed, the necessity for which work was not denied nor its cost disputed. *Held*, under *Bourgeois* v. *Freeholders*, 82 *N. J. L.* 82, the defendant is liable.

On appeal from the Paterson District Court.

Before Justices GARRISON, TRENCHARD and MINTURN.

For the plaintiff, *Collins & Corbin*.

For the defendant, *Edward F. Merrey*.

The opinion of the court was delivered by

MINTURN, J.   The appeal in this case brings before this court for review a judgment entered by the District Court of the city of Paterson in favor of the defendant, in an action wherein the plaintiff brought suit against the city for the cost of work done by the company in supporting and sustaining its railroad tracks and roadbed during the construction of two sewers across and under the company's right of way, laid in East Thirty-first street and Godwin street, in the city of Paterson.

The work was done by the company on the faith of two written agreements with the city, executed under the city's seal, dated, respectively, August 25th, 1906, for the Godwin street sewer. and October 3d, 1906, for the East Thirty-first street sewer.

Both of these agreements recite that the party of the second part (the city) desires to construct and maintain its cement

sewer across and under the right of way and tracks of the plaintiff along the centre of the respective streets, and that the plaintiff is willing to consent to such crossing under certain conditions, respecting the size of the sewer and the distance of the top thereof below the base of the rails of the tracks, &c.    Both of the agreements further provide as follows:

"The railroad company may, at its option, do all the work within the exterior lines of its right of way necessary to support and sustain its tracks and roadbed during the laying of said sewer, or during any repairs thereto; and in case the party of the second part shall fail to make necessary repairs, or to restore the tracks and roadbed as hereinbefore provided, the railroad company may do such work; the cost of all work done by the railroad company as herein provided, shall be paid by the party of the second part upon receipt of proper vouchers therefor."

Thereafter the company, pursuant to the terms of the contracts, proceeded to do all the work necessary to support and sustain the tracks and roadbed during the laying of the sewers.

The actual cost for the labor at Godwin street was $64.56, and at East Thirty-first street, $55.12, making a total of $119.68.    The suit was brought for the cost of labor alone and no charge was made for the material.

The trial judge found, as a fact, that the amount claimed by the plaintiff was reasonable, if the plaintiff was entitled to recover at all.

After the decision of this court in the former appeal (*New York, Susquehanna and Western Railroad* v. *Paterson*, 81 *N. J. L.* 72) ordering a *venire de novo*, the plaintiff amended its state of demand, which at that time proceeded upon the theory of a special contract, and annexed the common counts, thereby presenting the question involved upon the theory of an *assumpsit* at common law.

The concrete question at issue, therefore, may be resolved into the legal inquiry whether conceding the facts to be as the

trial court has found them, and as they are conceded by the parties to exist, is the plaintiff's claim supportable in law?

The legal *status* of the case, therefore, is substantially similar to the inquiry which we would be called upon to determine upon a demurrer. If this were a question in which the doctrine of *ultra vires* might be involved, as in *Atlantic City Water Works Co. v. Read,* 50 *N. J. L.* 665, and *Jersey City Supply Co. v. Jersey City,* 71 *Id.* 631, an entirely different rule of law would be applicable, and might properly be invoked. But the municipal corporation here was engaged in the execution of a public work, peculiarly within its province, under the provisions of its charter, and the fundamental theory underlying its creation, so that the question of legal power to perform the act, for executing which, at its request the plaintiff bases its demand, is eliminated from consideration. It is quite evident from the record that so far as the administrative officers charged with the practical execution of the work of the city could give legal effect to their acts, by the application of the usual formalities, by which official acts are indicated, the attempt was made by them in the manner which they usually adopted in the execution of such contracts.

The decision of the trial court is rested entirely upon the finding that the contract in question did not receive the approval of the board of aldermen or the department of streets and sewers. It is to be observed, however, that in no instance when the bills for the work were before the board of works, which had superseded the board of aldermen, did that board oppose payment because of illegality or irregularity in the contracting of the claim; but acted solely upon the ground that the bills were excessive.

The defendant now insists that it was under no legal necessity to enter into such a contract, because it possessed the power to construct its sewers and incidentally to compel the plaintiff to perform the work involved in this suit at its own expense, and that therefore no legal consideration existed as *quid pro quo* for the contract.

This contention, however, presents a debatable question, and if the acts and representations of the defendant's authorized agents and officials, up to the completion of the work, may be accepted as a criterion of the defendant's legal attitude upon that question, it is quite obvious from the record, that the work was undertaken by the plaintiff upon the theory either that the defendant conceded its lack of power in the premises, or lacked the disposition and will to perform the work, and the plaintiff, manifestly acting upon that concession, assumed the obligation and performed the work.

From such a *status* as we have here detailed, an action of *assumpsit ex debito justitiæ* has been conceded by the common law to exist as between individuals, since the distinct promulgation of that doctrine in *Slade's Case,* 4 *Coke* 92; 1 *Chit. Pl.* 100. That it will lie in the case of a municipal corporation acting through its duly-accredited officers, in the performance of a duty clearly not *ultra vires,* and for the public interest and benefit, is equally well settled by the trend of modern adjudications. *Arlington* v. *Pierce,* 122 *Mass.* 270; *Murphy* v. *Moris,* 18 *R. I.* 100; *Hitchcock* v. *Galveston,* 96 *U. S.* 341.

In *Corey* v. *Freeholders,* 47 *N. J. L.* 181, Mr. Justice Dixon, quoting the language of Lord Mansfield, in Moses *v.* McFarlain, says: "In one word the gist of this kind of an action is that the defendant, upon the circumstances of the case, is obliged, by the ties of natural justice and equity, to refund the money;" and the equitable doctrine underlying the action is similar whatever its subject-matter may be, where the corporation has received and enjoys the benefit of an act not *ultra vires,* and refuses to make compensation therefor. Without the citation of further authority, we consider the principle enumerated in the case of *Bourgeois* v. *Freeholders,* 82 *N. J. L.* 82, to be controlling here.

In that case, Mr. Justice Bergen, speaking for this court, says:

"A contract entered into on behalf of a municipality by its unauthorized agent in excess of the powers granted to the municipality, or without observing the conditions or limita-

tions imposed on the exercise of a granted power, cannot be ratified by the corporation, nor can it by any act of recognition raise an implied promise to carry it out, for the reason that it is without power to make an express promise, and the law will not, in such case, raise one by implication, but, where the contract of the unauthorized agents is one which the corporation may lawfully make, it can, by ratification, or by any efficient dealing with the subject-matter amounting to an affirmance of the contract and an appropriation of its benefits to public use, create a situation from which an implied promise to pay may arise."

The judgment under review will therefore be reversed and a *venire de novo* will be awarded.