**R. M. GRANT & CO., Inc., v. CITY OF LAKE WORTH, FLA.**

No. 5847.

Circuit Court of Appeals, Fifth Circuit.

May 6, 1930.

Rehearing Denied June 21, 1930.

580

E. J. L'Engle and J. W. Shands, both of Jacksonville, Fla., for appellant.

C. D. Gould and L. T. McGee, both of West Palm Beach, Fla., for appellee.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

This is an appeal from a judgment of the District Court of the United States for the Southern District of Florida, dismissing the case upon demurrer to the amended declaration, and adjudging the costs against the appellant. The plaintiff (appellant) sued in District Court, as pro tanto assignee of R. G. Lassiter & Co., for an amount alleged to be due Lassiter & Co., for work done and materials furnished under a contract with the city of Lake Worth for the construction of streets and sewers. The substituted first count of the amended declaration set out the facts of the transaction fully, anticipating the defenses of the city, so that its liability could be tested upon the sufficiency of this count of the declaration. There were also common counts, but they are not in any way involved in the appeal.

The city of Lake Worth, previously incorporated as a town, was, on June 3, 1925, incorporated as a city under a special charter (chapter 10764, Laws of Florida of that date). The town of Lake Worth had previously contracted with R. G. Lassiter & Co., a corporation for street and sewer work. On June 9, 1926, a written contract was entered into between the city of Lake Worth and Lassiter & Co. for the completion of existing work and the doing of future work. Under this contract, work was done by Lassiter & Co. for the city and was paid for currently on certificate of the city engineer, and improvement bonds were issued by the city for completed units of the work and turned over to the contractor in payment of the work. Interim certificates were issued also to the contractor, in advance of the issue and validation of the improvement bonds, which evidenced the right of the contractor to the bonds therein described, upon surrender of the certificates. The law required the improvement bonds to be validated by the circuit court of the appropriate county, and many bonds had been so issued, validated, and delivered to the contractor. The bonds were issued under a general act of the state of Florida (chapter 6864, Acts of 1915). On January 3, 1927, the plaintiff-appellant purchased from the city of Lake Worth all improvement bonds to be issued by the city during the life of the contract, not exceeding a maximum amount of $1,000,000. On January 4th, appellant was advised by the city of the practice of issuing to Lassiter & Co. interim certificates (for which no legal authority existed) in advance of the issue and validation of the bonds, and requested the appellant to conform to the practice, and it agreed to do so. Upon the faith of the interim certificates and the expectation that validated improvement bonds would be delivered on surrender of the interim certificates, the appellant advanced its money to the city. Improvement bonds

therefore were issued by the city, but the circuit court, contrary to its previous practice, declined to validate the bonds, and on appeal the Supreme Court of Florida upheld the refusal. City of Lake Worth v. State, 94 Fla. 644, 114 So. 457. The ground of the refusal was that the general act of 1915 did not apply to the city of Lake Worth under its new charter and that under its charter improvement bonds could not be legally issued until an election was held to approve the issue and only when the total bonded indebtedness of the city did not exceed 15 per cent. of the assessed value of its real and personal property. The plaintiff does not found its cause of action on the bonds or upon the obligation of the city to deliver them and the legal status of the bonds is not directly in issue in the case. Plaintiff's right of action is based upon the theory that, as holder of the interim certificates, which entitled Lassiter & Co. to bonds for completed work under the contract with the city, it was the assignee of Lassiter & Co., for the amount due it under the contract to the extent of the face value of the interim certificates held by appellant, and for which it had made advances to the city. It is agreed by both parties that the appellant stands in the shoes of the contractor, and that appellant's right to recover is no greater or less, as such assignee, than would be that of Lassiter & Co.

▆ The determinative question is whether the contract between appellee and Lassiter & Co. was sufficient by its terms and under the charter of the city to create a valid indebtedness in favor of the contractor against the city for completed work done under it, which was a general obligation of the city. The question divides itself into (1) whether the city had the authority under its charter to enter into such contract, the effect of which was to create a general obligation on the city; and (2) whether the terms of the contract were apt to do so. The District Court held that the law did not authorize the city to incur a general obligation for the construction of pavements and sewers, but only through the levy of special assessments against abutting owners, and that the terms of the contract showed that Lassiter & Co., in point of fact, looked only to collections from assessments for its compensation. The terms of the contract provided for payment of completed units in bonds or in cash, at the election of the city. The city elected to pay in bonds, but its power to pay in that way failed. This left two methods of payment under the charter, viz. in money or in certificates of indebtedness. Article 9, § 5, of the Charter, provides that, on completion of the work, the commission may pay the expense of the same out of any funds belonging to the city not otherwise appropriated, or it may pay for the same with certificates of indebtedness authorized by chapter 6864 of the Laws of Florida, approved June 4, 1915, and in addition assess the expense against the abutting property. No certificates of indebtedness were ever requested or issued and are not involved. Article 12, § 2, provides that no contract involving the expenditure of public money or imposing liability on the city can be legally entered into by the city until a sufficient amount of money has been appropriated for the liquidation of the pecuniary liability under it to mature during the period covered by the appropriation, and that contracts of the city made in disregard thereof are null and void from the beginning, with a proviso that the section shall not apply to bonded indebtedness or moneys to be collected by special assessments for local improvements. The moneys to be paid by the city under the Lassiter contract were to be ultimately reimbursed to it from collections from local assessments, and the prohibition does not therefore apply to the Lassiter contract.

▆ The limitations of article 7, § 1, of the Charter, apply only to the issuing of bonds to pay for improvement or to the borrowing of money for the same purpose, and do not apply to an indebtedness created for work done under the contract. These limitations avail to prevent the issuance of improvement bonds unless an election is held and the debt limit not exceeded, and prevent the borrowing of money for improvements. The city borrowed no money to pay for the work done by Lassiter & Co. It merely paid a debt it owed Lassiter & Co. for work done under an authorized contract. Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659; Gelpcke v. Dubuque, 1 Wall. 175, 17 L. Ed. 520. The option of the city to pay in its bonds did not prevent its being liable to pay in money, when it was disabled from legally issuing its bonds. Barber Asphalt Co. v. Harrisburg (C. C. A.) 64 F. 283, 29 L. R. A. 401; Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659. Lassiter & Co. was not obliged by the terms of its contract to look to collections from local assessments. Its recourse was to money or bonds. The fact that the city had levied local assessments did not excuse it from paying in money when its ability to pay in bonds ceased. If the city's obligation had been to pay through

local assessments, the levy of valid assessments would have exonerated it. Its obligation under its option was to pay in bonds, not through local assessments, and its failure to pay in bonds gave it no right to pay through collections of assessments instead of in cash. If it had elected to issue certificates of indebtedness it would have guaranteed their payment to the contractor which would have created a general obligation against it. We think the city had the power under its charter to make the Lassiter contract, and that it incurred the indebtedness it created under it as a general obligation of the city when its power to issue bonds failed.

We also think that the parties to the contract did not contemplate that the contractor should have recourse only to collections from local assessments for payment for work done. The contract provided for work of vast amount and over an extended period —all the work of that character that the city might do during the life of the contract. Financing such a contract from the proceeds of local assessments, which could not yield until the completion of the unit of work and the levy of the assessment, and might be paid over a period of ten years thereafter, would seem impracticable. The language of the terms of the contract as to payment show that the parties did not intend to remit the contractor to collections from local assessments for its pay. Its primary resort, at least, was to cash or bonds of the city or its guaranteed certificates of indebtedness, and for temporary needs a revolving fund was created. When all these expedients failed to produce, the contractor was excused from his obligation until they again began producing, though the need of prompt completion of the work is recited to have been urgent. The contractor was not to be required to continue the work on the faith of realizations from assessment collections. Section 11 of the contract provides for monthly estimates to be furnished the contractor by the city engineer. Section 12 provides for monthly payments of 90 per cent. of all materials delivered and work performed during the preceding month, the remaining 10 per cent. to be paid upon completion of the unit, and that thereupon the city should at once make up its assessment roll and issue its bonds to cover all cost of work completed, and proceed with the validation of said bonds immediately in order that final payment for them might be secured in the briefest possible time. Payment for work was to be made in cash or at the option

of the city in its legally validated improvement bonds, which the contractor agreed to accept in lieu of cash at 95 per cent. of their face value. The city agreed to supply a fund from proceeds of bonds sold and assessments collected, from which the contractor might receive cash for the work done. The fund was a temporary expedient for keeping the contractor financed, in order that the work might proceed without interruption. The contract provided that, when there was sufficient cash in the fund, the estimates would be paid in cash. If the cash was not sufficient, the contractor agreed to accept bonds. If no cash or bonds were available the work was to be suspended until cash or bonds became available. These terms of the contract, as to payment, show that the contractor was to be paid in money for current estimates, and in bonds or cash at the option of the city for completed units of work. A fund was to be supplied, among other ways, with collections from local assessments, to provide temporary payments. In no other way was the contractor to look to assessments. The bonds were believed by the parties to be valid general obligations of the city when the contract was entered into. The terms of the contract seem to us to be inconsistent with the idea that the contractor was to look for his pay to the proceeds of the assessments, but, on the contrary, to indicate that the parties intended that the contractor should be paid by the city from the monies not otherwise appropriated or from the proceeds of its bonds and that the city should look to the collections from local assessments to reimburse itself for payments made by it to the contractor. The amount due the contractor for completed work was a general obligation of the city, just as the improvement bonds and the alternate obligation of the city to pay in cash were understood by the parties to the contract to have been.

We think the city had the power under its charter to make the contract sued on and to incur thereby an indebtedness for completed work that became a general obligation against it, and that it was not intended that the contractor should look only to assessments, but that the city should incur a general obligation to the contractor to pay for completed work, if it failed to deliver bonds therefor.

These conclusions result in a reversal of the judgment of the District Court and the remand of the case for further proceedings in conformity with this opinion.

Reversed and remanded.