BARBER ASPHALT PAVING CO. v. CITY OF HARRISBURG.

(Circuit Court, E. D. Pennsylvania. May 1, 1894.)

No. 48.

INTERPRETATION OF CONTRACT—IMPLIED WARRANTY.

    A company contracted with a city to do certain paving, the expense to be assessed against the abutting property. The city agreed to turn over to the company all assessments paid into its treasury, and to assign the remaining assessments to the company, which agreed to accept the same in payment of the amount due, with the further stipulation that "the city shall not be otherwise liable under this contract, whether the said assessments are collected or not." After both parties had complied with the contract, the statute authorizing the assessment was adjudged unconstitutional, and the company was unable to collect the sums unpaid. *Held,* that the contract gave rise to no implied warranty that the city had power to make the assessment, and it was not liable for the balance of the contract price. Horter v. City of Philadelphia, 13 Wkly. Notes Cas. 40, and Dickinson v. City of Philadelphia, 14 Wkly. Notes Cas. 367, followed. Hitchcock v. Galveston, 96 U. S. 341, distinguished.

This was an action by the Barber Asphalt Paving Company against the city of Harrisburg to recover money alleged to be due for street paving. Defendant demurred to plaintiff's statement of claim.

George Fred'k Keene, Charles H. Bergner, and A. S. Worthington, for plaintiff.

Wm. H. Middleton, City Sol., for defendant.

DALLAS, Circuit Judge.   By a contract in writing between the plaintiff and the defendant, the former agreed to do certain paving, and, having fully complied with and performed the contract on its part, it brings this suit to compel the defendant to pay for the work. The defendant demurs to the statement of claim, and, in support of its demurrer, relies upon the following clauses of the contract:

"And the city of Harrisburg, on its part, will pay to the said the Barber Asphalt Paving Company, in accordance with the specifications, and out of the assessments made and levied for the purpose, the following prices: * * *. It is also understood and agreed that the payments aforesaid provided for shall be paid as follows: First, out of the amount of the assessments paid into the city treasury by the property owners, and, when that fund is exhausted, then the city of Harrisburg will assign to the said the Barber Asphalt Company the municipal claims assessed and levied upon the properties abutting on and along the said Market street between the points above mentioned, or mark the same of record to the use of the said company, and also permit the use of the corporate name of the said city in any legal proceedings necessary or proper to enforce the collection of the said assessments.   It is also understood and agreed that the said company shall accept the said assessments in payment of the amount due it under this contract, and the city shall not be otherwise liable under this contract, whether the said assessments are collected or not."

When the contract was made, and until after the work thereunder had been completed, both parties supposed that the defendant could lawfully make and enforce the assessments referred to in the foregoing extracts.   In reliance upon this supposition, assessments were made, and municipal claims based thereon were filed, marked to the use of the plaintiff, and by it accepted.   The owners of some of the abutting properties paid without suit, and the sum of these payments ($13,470.59) the defendant paid over to the plaintiff. Every obligation of the defendant was precisely fulfilled in accordance with the terms of the contract.   It became, and was, an executed contract.   This is unquestionable; but the plaintiff, nevertheless, insists that the defendant is still liable to it for the amount ($21,729.99) of the claims which have not been voluntarily paid, because those claims, by reason of the absence of lawful power in the defendant to levy the assessments, are invalid and, therefore, worthless.   The lack of power alleged is established by decisions of the supreme court of Pennsylvania in three cases in which it has pronounced the statute (Act Gen. Assem. May 24, 1887) upon which, alone, the existence of such power depended, to be unconstitutional. Shoemaker v. Harrisburg, 122 Pa. St. 285, 16 Atl. 366; Berghaus v. Same, 122 Pa. St. 289, 16 Atl. 365; Klugh v. Same, 122 Pa. St. 289, 16 Atl. 366.   These cases were commenced—in the name of this defendant, to the use of this plaintiff—by writs of scire facias on asserted municipal claims which had been marked to the use of the plaintiff, as has been mentioned, and the judgments therein conclusively determine that all such claims are absolutely void, and the plaintiff's expectation of collecting the balance of its compensa-

tion against the abutting properties is, therefore, disappointed. But does it follow from this that it is entitled to recover from the defendant? If it is—as it is not alleged that the defendant has committed any wrong—it must be because it has, by contract either express or implied, assumed the liability now sought to be fixed upon it. The pertinent part of the only express contract has been fully quoted. It is impossible to find in it any undertaking by the defendant to pay otherwise than by special assessments, and this undertaking is coupled with that of the plaintiff to "accept the said assessments in payment." But the contention of the plaintiff's counsel, as I understand it, though not so expressed, amounts to this: that, as incident to the express contract, there was an implied warranty by the defendant that it had lawful power to levy the assessments, and that, a breach of that warranty having been shown, a right of action accrued. The theory upon which this position is founded might be accepted, even as against a municipality, without conceding its applicability to this case; for it is never admissible to imply a contract at variance with that which the parties have expressed, and, in the present instance, the expressed intent precludes an implication of the warranty alleged. Since the year 1874 (P. L. p. 230), the defendant has had authority to apply its general revenues to paving its streets. On May 24, 1887, the act was approved (Act Gen. Assem., supra) by which it was intended to confer upon it the power to charge the cost upon the abutting properties. The defendant's supposed right to do this was derived solely from the last-mentioned act, and this was known to the plaintiff as well as to the defendant, when, on August 13, 1887, within three months after the passage of the empowering act, and admittedly with reference to it, the contract in suit was entered into. The plaintiff desired to do the work, and the defendant, of course, desired to have it done; but it was not willing to impose the expense upon its treasury. Hence, with the manifest object of excluding the possibility of inference that the defendant might be required to make payment from its general resources, it was provided that it should pay by special assessments, and that "the city shall not be otherwise liable under this contract, whether the said assessments are collectible or not." The agreement was not merely that the defendant would pay in the manner stated, but also that it should not be liable to pay in any other manner. To me this seems the reasonable and natural construction of the language used, and, if this understanding is correct, it results that the warranty contended for cannot be implied, and that the plaintiff's case must fall for want of any contract to support it.

A number of decisions of the courts of several of the states have been cited; but it is impossible to reconcile them, for they are not harmonious, and it would be profitless to discuss them, for none of them is of binding authority, or has determined my judgment. Suffice it to say, the subject has been twice considered by the supreme court of Pennsylvania (in which state this contract was made), and the decision of that tribunal, in each of the cases re-

ferred to, accords with the conclusion which I have now reached. In Horter v. City of Philadelphia, 13 Wkly. Notes Cas. 40, that court said:

"In this case, the plaintiffs expressly agreed, in the event of a failure to collect the assessment bills, that no recourse should be had against the city. The plaintiffs knew the restricted power of the city, and had the same knowledge it had of the legal invalidity of the particular assessment in question. The city did all which she agreed to do. With this full knowledge and means of knowledge, the plaintiffs voluntarily assumed the risk of collecting the assessment. Having failed in the attempt so to do, they cannot now repudiate their agreement, and make the city liable to them."

The opinion of the same court in Dickinson v. City of Philadelphia, 14 Wkly. Notes Cas. 367, is as follows:

"The contract on which this suit was brought expressly stipulates that 'all costs of paving, excepting intersections, and for curb and gutter stones, shall be collected by the contractor from the owners of the property fronting on the said Market street,' and also that the city 'shall be at no expense for said paving, excepting crossing stone and intersections of streets, and the necessary gutter stone for the intersections.' The exemption of the city from all liability to pay for the paving is thus stated in clear and unmistakable language. The city shall incur no expense, and the contractor shall look to the owners of the property fronting on the street for his work and materials. If he has failed so to collect his claim, in the language of Horter v. City of Philadelphia, supra, he cannot now repudiate his agreement, and make the city liable to pay him."

Careful reading of the reports of these cases, and especially of the points which were made in argument, discloses that neither of them is distinguishable from this one in principle, and that in them substantially the same questions which are now raised were presented. It is true that in the Horter Case the power of the city was, by statute, restricted to the mode of payment agreed upon; but the judgment of the court was rested upon the terms of the contract itself, and although, in the present case, the city of Harrisburg might have contracted to pay otherwise than by assessments, the fact is that it carefully avoided doing so. It is also true that in Horter v. City of Philadelphia the defect of power was only as to a single property owner, but as to that one the defect was as complete and absolute as in this instance, and the court seems to have attached no weight to the contention, which was there made, that the city was liable because it "could, in point of law, deliver no assessment bills," etc. In Dickinson v. City of Philadelphia, supra, the contract had been made by the commissioner of highways, in pursuance of an act of the legislature. The court, however, did not regard that circumstance as material, but, deeming the controlling facts to be the same, decided the case as they had decided the Horter Case, and upon the same grounds.

The cases to which I have particularly referred, and the views which I have endeavored to present, are not in conflict with the judgment of the supreme court of the United States in Hitchcock v. Galveston, 96 U. S. 341. There the promise was to pay in bonds of the promisor which it had no authority to issue, and the court held that this defect of power could not be set up to wholly avoid

payment. But in Horter v. City of Philadelphia, in Dickinson v. City of Philadelphia, and in the case now before this court the promise was not to pay in obligations of the defendant, but in claims against others, the collection of which was to be at the risk of the plaintiff, without recourse to the defendant. In Hitchcock v. Galveston, the debt was the defendant's, and the only question was as to the manner of payment. In this case the plainly-expressed agreement is that the contractor shall look to the abutting properties, and to them only. By its terms he is bound, and no consideration of the supposed hardship to result from maintaining them would justify any attempt on the part of this court to defeat their legal effect. As was said by the supreme court in Peake v. New Orleans, 139 U. S. 361, 11 Sup. Ct. 541: "We trust that this court will never falter in its duty of brushing away all false pretenses, and holding every municipality obedient to the spirit, as well as the letter, of all its contract obligations. At the same time, it is equally the duty of this court, as of all others, to see to it that no burden is cast upon taxpayers, citizens of a municipality, which does not spring from that which is justly and equitably a debt of the municipality; and, when a contract for local improvements is entered into, the contractor must look to the special assessments, and to them alone, for his compensation, and if they fail, without dereliction or wrong on the part of the city, neither justice nor equity will tolerate that it be charged as debtor therefor." The demurrer is sustained, and judgment for the defendant.