## CHARLESTON.

F. L. WHITTAKER v. CITY OF HUNTINGTON.

Submitted April 5, 1921.    Decided April 19, 1921.

1.    MUNICIPAL CORPORATIONS—*City Accepting Conveyance Had Power to Contract to Complete Former Owner's Plans for Improvements to Attract Prospective Purchasers, in Accordance with Previously Adopted Park and Boulevard Plan.*

   A municipal corporation whose charter empowers it to open, maintain and control public streets and bridges within the city, to acquire, lay off, and control public grounds, squares

and parks for the convenience of its inhabitants, and to purchase, condemn, lease, or contract for the real estate necessary to effectuate such purposes, lawfully may enter into a contract with an owner of land within its boundaries, whereby, in consideration. of his voluntary conveyance to the city of certain portions of his property which he was preparing to develop, ornament and improve for the benefit of other land owned by him, in order to render it attractive to prospective purchasers of sites for homes, by the construction of bridges and boulevards and the opening and dedication of a public park thereon, the city undertook to complete and maintain such improvements without further expense to him and in accordance with a park and boulevard plan which it theretofore had adopted. (p. 426).

2. SAME—*Where City Purchases Property Under Agreement to Improve, it May Not Retain it and Decline to Fulfill Contract.*

Having acquired the property pursuant to such an agreement, the municipality may not lawfully retain it and at the same time decline to fulfill its portion of the agreement. (p. 428).

3. SAME—*Seller of Land to City Under its Agreement to Improve May Recover Damages for Breach.*

One who in good faith conveys property to a municipality in reliance upon such an agreement, may, in case of its failure to comply with its express undertaking, recover compensation in damages for the loss sustained by reason of the breach. (p. 429).

Case Certified from Circuit Court, Cabell County.

Action by F. L. Whittaker against the City of Huntington. Demurrer to declaration overruled, and case certified.

*Affirmed.*

*Warth, McCullough & Peyton* and *C. W. Freeman,* for plaintiff.

*Deegan & Hall,* for defendant.

LYNCH, JUDGE:

The declaration, comprising three counts, one common and two special, the action being assumpsit, the circuit court held sufficient on demurrer and certified its ruling here for examination and approval. The basis of the recovery sought by plaintiff is the breach of a contract entered into between him

and the defendant, a municipal corporation duly chartered and organized pursuant to the requirement of the laws of this state.

Plaintiff, according to the allegations of the declaration, was the owner of a large tract of land fronting on the southern bank of Four-Pole Creek in the city of Huntington, and also of another on the north side of the creek. In order to render the former accessible and attractive to prospective purchasers of sites for homes, he theretofore had constructed at his own expense a bridge at Johnson Lane and was preparing to make further improvements on the property including among others a second bridge across Four-Pole Creek and a park and boulevard along its borders. Knowing of his intention and purpose, the defendant city proposed that he convey to it the bridge already constructed and certain portions of his property along Four-Pole Creek on which the improvements were to be made, agreeing in return to complete and maintain such improvements without further expense to him and in accordance with a park and boulevard plan adopted and approved by the proper municipal authorities. Relying upon these representations on the part of the city, plaintiff conveyed to it the property by deeds dated October 8, 1913, and July 17, 1914.

The intention of the contract and conveyance was to pass the title to the land to the city of Huntington to enable it to perform its agreement to complete the boulevard in course of construction by plaintiff when the contract was entered into between the parties, to maintain it in a condition suitable for public travel, to establish, beautify and maintain on the land lying between the boulevard and Four-Pole Creek a public park for the benefit of the inhabitants of the city, to straighten the bed of the stream so as to minimize the danger from the overflow of its waters during heavy rainfalls and otherwise improve its channel, to keep Johnson Lane bridge in safe condition and repair, to construct a strong and substantial bridge at Fifth Street, East, and to raise the money necessary to accomplish these purposes by a levy on the taxable property within the city. All the work so desig-

nated was to be done in accordance with plans and specifications theretofore prepared by the agents of the municipal corporation and by them exhibited to plaintiff to induce him to enter into the agreement and convey unto it the land, title to which the deeds vested in the city and the city retains without any apparent intention to reconvey it to him or execute the agreement by the performance of the work the city covenanted to perform. The only indication of an intention to perform the contract, so far as appears from the declaration, is the assessment and collection of taxes upon and from the taxable property of the city, amounting to $51,533.34, as alleged in the third count, that method being the one prescribed by the contract and the only one available to defendant under the law, but no part of which has been appropriated or expended by the city for that purpose, but on the contrary has otherwise been appropriated and expended in disregard of the obligations assumed by defendant.

The nature or character of the injury or damage resulting to plaintiff by reason of the failure of the defendant city to perform its solemn covenants is not set forth with definiteness or particularity in the second count of the declaration, which contains merely the general averment that, '' by reason of the premises,'' he has sustained damages in the amount of $20,000. But the third and final count goes into greater detail and discloses that the recovery sought is based upon the fact that ''the plaintiff has been deprived of great gains and proceeds which he would have derived by the sale of land on the south side of said Four-Pole Creek from the performance of said agreement by the said defendant.''

The chief criticism urged against the two special counts, the common count not being objected to or objectionable, is the lack of apparent authority on the part of the city to enter into such a contract, although it purposely accepted the conveyance, retains the title, and manifests no disposition either to perform its covenants or make restitution in damages or by a voluntary reconveyance of the property so acquired. The question whether the city could accept the property so conveyed to it, and bind itself by contract to undertake to per-

form the obligations so assumed and agreed to be performed, and collect, appropriate and expend public funds raised by taxation as it covenanted to do but has not done, must be answered by the charter itself. .

Among the manifold provisions of the city charter pertinent upon this investigation are the following: The power to contract, to sue and be sued, to implead and be impleaded; to levy and collect taxes, and when collected to appropriate them in the manner and for the purposes therein specifically authorized, included within such authority being the power to open, vacate, broaden, grade and change the grade of public streets and avenues, sidewalks, gutters, and bridges; to alter, improve, embellish, ornament, light and control them for public use and convenience; to acquire, lay off, appropriate and control public grounds, squares and parks, either within or without the city limits; and when in the opinion of the Board of Commissioners, in these respects the controlling officiary of the city, it is necessary or desirable to acquire real estate for any public purpose so authorized, it may institute and prosecute to finality condemnation proceedings to the same extent and with like effect as other public corporations may do in the exercise of the same power when conferred upon them; and may ''purchase, sell, lease, or contract for and take care of all public buildings and structures and real estate * * * deemed proper for the use of the city.''

Language more broad, explicit and comprehensive than this is difficult to conceive. The authority to tax, to purchase, to acquire, to condemn, to contract for, to improve, embellish, light and control whatever the city may need, including land for public parks, either by purchase or condemnation, are most liberal terms and give wide scope for the acquisition of land and its appropriation to the requirement of the city in the administration of its affairs, and include whatever the commissioners may deem necessary, desirable or expedient for practical or ornamental purposes, unless the power so conferred contravenes public policy or violates some rule of law forbidding the grant of such extensive and liberal terms to a municipality. There is, however, no such objection urged

against the declaration, and there is perceived no reasonable grounds for any.

The right to purchase or condemn does not preclude resort to one method alone, but includes either or both. The difference between the methods is more apparent than real. In the first instance the land is acquired with the consent of the owner, in the other against his will. The one is a voluntary sale, the other a compulsory sale. Both imply payment of a consideration. Purchase and acquire, words used in the city charter, are correlative terms when applied to the manner of obtaining real or personal property necessary or desirable for the purposes of the corporation, and these purposes are not limited to the transaction of the ordinary business of the city but include those of every character authorized by the charter, if lawful. It matters not by what process or upon what consideration a municipal corporation acquires real estate, provided only it acts within the scope of the authority lawfully vested in it.

Had the city of Huntington purchased the land and paid for it in cash out of the proceeds of taxes levied and collected in the usual manner, who could legitimately or successfully controvert its right to do so or prevent the improvement of the land so acquired, if authorized by its charter? There is in that instrument no provision that would warrant such interference, if otherwise the municipal officers and agents kept within the bounds prescribed by it, by the Constitution and other laws of this state relating to municipalities. The same statement would apply with equal propriety had the city acquired the title by condemnation. In either event payment of money for the land acquired and for the improvements would have been necessary, as would also the levy, collection, appropriation and expenditure of taxes. If this be true, as logically it must be, what matters it whether the land be purchased, condemned or otherwise acquired? If, as authorized by the charter, the city becomes vested with the title to real estate with the express understanding and purpose that it shall be devoted to a particular use, why may it not stipulate as a consideration for its acceptance of a volun-

tary grant of the title the improvement of the property by the expenditure of the public funds of the city in the same manner and to the same extent necessary had it acquired the title in any other way? To this question there seems to be but one answer. It cannot plausibly be assumed that the city officials originally acted in bad faith in their dealings with the plaintiff, and accepted the deeds with no intention to perform their covenants, in whatever light their subsequent default may be viewed. And apparently they entertain no doubt concerning their right to accept the lands, upon the stipulated conditions. There can be no such doubt now and there was no room for any then. What they did and promised to do in 1913 was done within the scope of the city charter provisions. So closely connected in time were the amendment of the charter in that year to permit the acquisition of land and its improvement as a park by the expenditure of the revenues of the city raised for that purpose and the acceptance of the conveyance as to warrant the assumption that the one prompted the other. Practically they were contemporaneous. The amendment became effective in May; the first conveyance was in October of the same year.

One of two acts on the part of the corporation in the circumstances of this case is obvious. It must restore the status quo ante or otherwise make restitution in some form or other. It cannot keep the land and disregard its covenants. A municipality, whatever may be its character, whether a city or town, can no more violate with impunity its solemn obligations, lawfully contracted, than can a private corporation, a partnership or an individual. The obligation to deal justly rests upon all persons alike whether natural or artificial. If an artificial entity obtains money or property with or without the consent of the owner, the law independent of statute will compel restitution or compensation in damages. The facts dealt with in this case and in *Bergen Beach Land Corporation* v. *City of New York*, 185 N. Y. S. 177, bear a marked similarity or analogy. The Board of Commissioners of the city of Huntington and the Sinking Fund Commissioners of

the city of New York had plenary power to bind their respective cities by contract and exercised that power. What each contracted to do, but failed to perform, would if performed have enured to the plaintiff's pecuniary benefit and advantage. In the land company case the work to be done required the location of the boundary line between Jamaica Bay and the land of the plaintiff in part submerged, subject to the approval of the federal government, the dredging of the channels of the bay, and the improvement of the means of access to and from the land owned by plaintiff, the sediment to be deposited thereon for the enhancement of its value. The general government through its proper agencies consented to the execution of the contract insofar as its rights were involved. But as the city refused to perform its part of the contract, the land company sued to force it to do so. This relief the court refused on the theory that the dredging of the channels was of that character of work the detailed execution of which the court could not control and especially because it involved the exercise of a legislative power which was subject to change from time to time. It did, however, hold the breach of the contract to be compensable in damages recoverable in an action at law.

In effect such is the holding of the Supreme Court of the United States in *Hitchcock* v. *Galveston,* 96 U. S. 341, and *Chapman* v. *Board of County Commissioners,* 107 U. S. 348. In the case first cited the plaintiff had performed his part of the contract and the city sought to evade its promises to compensate him on the ground that the method of payment was not within the scope of its charter provisions. This excuse the court held insufficient justification for the breach, and that although the mode prescribed for raising the necessary fund was not lawful, the city could not receive and retain the benefit of the labor performed without compensation, and sustained plaintiff's right to maintain the action. In the Chapman case the county by a lawful contract purchased from plaintiff land to be used as a county home for the poor, but agreed to pay therefor in a manner not authorized by statute. Upon failure of the county to pay the con-

sideration agreed upon, plaintiff instituted a suit to compel a reconveyance of the property, which the court permitted on principles announced in the preceding case.

But if, for the purpose of the argument, it be conceded that the mode of payment agreed upon by the parties was irregular or inconsistent with the due and ordinary exercise by the city of its inherent governmental or legislative functions, yet that concession, if warranted in law or fact, did not suffice as a valid excuse for the breach of the contract. For "where a party deals with a corporation in good faith, and the transaction is not *ultra vires,* and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists." *Merchants' Nat. Bank of Boston* v. *State Nat. Bank of Boston,* 10 Wall. 604.

*Coit* v. *City of Grand Rapids,* 115 Mich. 493, is authority for the proposition that a municipality cannot retain the benefits of a contract which has been fully performed by the other party, and which is neither *malum prohibitum* nor *malum in se,* and at the same time deny the validity of the contract. The facts as stated in the opinion were: "The common council of the defendant city is, by its charter, given the exclusive control over the construction and maintenance of sewers. It is also clothed with the express power to purchase lands for that purpose. The common council deemed it necessary for the public health that the Prescott Street sewer be extended so as to empty into Grand River at a greater distance below the city than it then did. The proposed extension was for 80 rods across lands owned by plaintiffs. These lands were low (from 7 to 14 feet below the established grade of the streets), subject to overflow, were not suitable for residence purposes, and were only occupied for pasturage. The mouth of the sewer is at about the center of the plaintiff's lands where it empties into the river. A committee was appointed to obtain, by purchase, if possible, lands for the construction of the sewer, which was large,

having an inside diameter of seven feet. The right of way and necessary land, with the perpetual right of ingress and egress, was obtained from the plaintiffs as well as others; deeds were executed, recorded; the sewer constructed; and the city put in possession· The consideration of the deeds from the plaintiffs was one dollar and the agreement that they should not be assessed for the construction and maintenance of the sewer. All the proceedings for the purchase of the land were regular. The common council at first undertook to carry out the agreement, and under the authority conferred upon it established an assessment district, leaving out the lands of plaintiffs. The assessment was again revised excluding the land. The council met the third time, ignoring the contract with plaintiffs, included their land in the assessment district, and assessed their portion of the expense of construction at $2,617.22.'' There the sole defense was that the contract was *ultra vires,* the exemption of the property being unlawful. In the opinion the court also said: ''There is no rule of law or of morals which relieves the recipient of the substantial benefits of a partially executed contract from the obligation to perform or pay that part of the consideration which he can perform or pay, because the performance of an insignificant portion of it is beyond his powers. On the other hand, the true rule is, and ought to be, the converse of that proposition.''

There is little, if any, difference in principle between the acceptance by a municipality of labor upon its streets upon an express promise to render compensation therefor in a manner unauthorized by law, as was the case in *Hitchcock* v. *Galveston,* cited, and of land for the establishment of a park, the construction of a boulevard, streets and bridges, etc., as in this case. Each action so taken is administrative in character and effect. And while courts will not attempt to control affairs entrusted to the discretionary judgment of the official representatives of a municipality as to the time, manner or method of carrying into effect the powers conferred upon it by the legislature, yet it will not be permitted to perpetrate acts of gross injustice upon those who deal with

it in good faith, relying upon its promises validly made upon a sufficient valid consideration and duly executed by the party injured. As already remarked, a municipal corporation is as much bound by ordinary rules of honesty and by the terms of a valid contract as any other contracting party. The form of its creation and its corporate nature do not operate to exempt it from liability unless the contract is one it cannot lawfully make, acting within the limitation of its charter rights and privileges. This is not such a contract. Rather it is one not only not forbidden but specifically authorized. There is no occasion to apply the rule of presumption in favor of the validity of a municipal contract or its binding force when entered into for a legitimate object. Even if it be conceded for the sake of argument, but not decided, that defendant cannot be required to perform what it has promised to do in the manner and to the extent promised, yet it seems clear on reason and principle that it cannot keep what it has lawfully obtained without restitution or compensation in damages. To afford such a salutary opportunity for the promotion of the public health and convenience doubtless was the prime motive for asking the legislature to liberalize the charter provisions so as to permit the acquisition of land for that purpose. To this demand it readily yielded its unqualified approval. As already observed, it is worthy of note in this connection that the amendment of the charter in this particular occurred only a few months prior to the date of the contract and first deed. They were so nearly simultaneous in time as to warrant the suggestion that the one inspired, if it did not purposely anticipate and contemplate the other.

Everything considered, it must follow as a matter of course that the contract is not invalid; that it is one the city had the power to make and lawfully obligated itself to perform. If it had faithfully endeavored to comply with its promises and in every particular to perform its covenants, we are unable to surmise by what authority the work it engaged to do could have been prevented. Its own wilful disregard of the legal duty assumed compelled action by the plaintiff for his

protection. The decisions and other authorities cited by counsel for the city have received due care and examination, and in them there is found no principle of law and no argument at variance or in conflict with the statement of the law applicable to the facts of the case under review. The former deal with situations wholly unlike those here involved. And even they are not wholly consistent with other authorities treating of the same subject. The questions decided challenged contracts that plainly were ultra vires the charter rights and powers of the municipal corporation, but in some of them the latter were held liable notwithstanding the pretended exercise of the ultra vires power, if the corporation had received and retained the benefit of the contract fully performed by the other party to the agreement.

If, as defendant argues, the second count is too vague and indefinite to give sufficient information as to what plaintiff will attempt to prove in support of the averments therein contained, or in whatever respect it is indefinite or vague, the statute furnishes adequate means to cure the defect without an amendment of the declaration. The trial court may, upon defendant's motion, require a more specific statement of what plaintiff will demand in order to advise defendant of the claims it must prepare to meet, should the court be of opinion that there is such imperfection in the pleading of which complaint is made.

It is not proper at this time and upon this certificate to enter upon a discussion as to the measure of the damages provable upon the general issue when pleaded. There is no jurisdiction now and here to pass upon that question and cannot be any until the lower court has acted, and it has not done so. That question cannot reach this court except by writ of error after verdict and judgment. It is only of the sufficiency of the declaration upon demurrer and the correctness of the ruling certified here that we have authority to speak, and do speak, at this time. Our conclusion, therefore, is to approve the ruling certified for our opinion, and retransmit the record for further proceedings, together with this opinion duly certified.                  *Affirmed.*